| | |
|---|---|
| CBD INDUSTRIES, LLC, | ) |
| Plaintiff, | ) Civil Action No. 3:21-cv-69 |
| v. | ) JURY TRIAL DEMANDED |
| MAJIK MEDICINE, LLC, | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff, CBD Industries, LLC, formerly known as cbdMD, LLC ("CBDMD"), for its complaint against defendant, Majik Medicine, LLC ("Majik"), alleges as follows.

## INTRODUCTION

1. CBDMD brings this action against Majik to cancel its registered trademark – CBD MD – related to cannabidiol oil ("CBD") products produced from the hemp plant. Majik succeeded in registering its trademark in 2017 even though CBD sales were unlawful under federal and state drug laws, and even though sales of food or dietary supplements containing CBD were unlawful under the federal Food, Drug and Cosmetic Act ("FDCA"). CBDMD also asserts claims for false advertising and unfair competition under the § 43(a) of the Lanham Act and state law and trade disparagement based on Majik's advertising and promotion using its trademark and other statements of alleged fact that harm CBDMD.

## PARTIES

2. CBDMD is a North Carolina limited liability company having a principal place of business at 8845 Red Oak Blvd., Charlotte, North Carolina.

3. Majik is a limited liability company that, on information and belief, has a principal place of business at 629 Village Lane South, Mandeville, Louisiana. The members of Majik are Brenda Kraft, Christy Peachey, and Danny Sinclair, all of whom are citizens of Louisiana.

## JURISDICTION

4. This is an action against Majik for trademark cancellation, false advertising and unfair competition under the Lanham Act and state law, and trade disparagement.

5. Exclusive subject matter jurisdiction over this action is conferred upon the Court pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121(a). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367 and under § 1332 and diversity of jurisdiction exists and the amount in dispute is over $75,000, exclusive of interests and costs.

6. Personal jurisdiction over Majik exists in this state. Majik directs its advertising and its use of its CBD MD Mark within the State of North Carolina and offers to sell its competing CBD products to residents of North Carolina, who may purchase products through its website, by email, or by telephone. Majik is also otherwise engaged in substantial activity in North Carolina and has engaged in communications with CBDMD pertaining to the subject matter of the claims at issue here.

7. Venue in this District is proper under 28 U.S.C. § 1391(b).

**A. CBDMD**

8. CBDMD's parent entity (CBDMD, Inc.) is a publicly traded company.

9. CBDMD, the operating entity, produces and distributes various high-grade, premium CBD products under its CBDMD™ brand. CBD is a natural substance produced from the hemp plant and the products manufactured by CBDMD are non-psychoactive as they do not contain tetrahydrocannabinol ("THC").

10. CBDMD started selling products including topical lotions, topical creams, topical oils, medicinal lotions, medicinal creams and medicinal oils under the CBDMD mark at least as early as May 16, 2017. The CBDMD line of products has been enthusiastically received by the consuming public, generating sales in excess of $30 million. The CBDMD line of products is available in interstate commerce at retail outlets and on its website located at https://www.cbdmd.com, incorporated here by reference.

11. CBDMD has been the highest-level sponsor at numerous large events attended by thousands of participants interested in viewing, purchasing and using its products. CBDMD's CBDMD mark is well known and recognized.

12. CBDMD, through its affiliated entities, applied to register certain trademarks, which have not been issued. It has a common law trademark for CBDMD.

**B.     MAJIK**

13. On December 21, 2011, Daniel Sinclair ("Sinclair"), Brenda N. Kraft ("Kraft"), and Christy Peachey ("Peachey") formed a limited liability company under the laws of Louisiana named Majik Medicine, LLC, the defendant in this case. Sinclair is the manager of Majik and Kraft and Peachey are its members. As of April 5, 2019, Majik was not in good standing for failing to file an annual report with the Louisiana Secretary of State. Public records show that Majik filed an annual report on or about April 8, 2020.

14. Majik has been and is selling products in interstate commerce, including in North Carolina, that contain CBD, including products intended for ingestion by humans. Majik maintains a website to advertise and promote its products, https://majikmedicine.com. It also promotes its products on a Facebook page.

15. CBDMD has standing to bring these claims. CBDMD and Majik are competitors in the market for CBD products. Majik has made material false representations about CBDMD intended to defame, disparage, and injure CBDMD in the sales and marketing of its products. And Majik is unlawfully using its CBD MD Mark, which the U.S. Patent and Trademark Office ("PTO") should never have issued, and is likely to cause consumers into erroneously believing that Majik's products are lawful food and dietary supplements, which they are not.

16. Further, Majik advertises, offers to sell, and sells its CBD MD products using its name, Majik *Medicine*, which is likely to cause consumer confusion and to falsely induce them to believe that its CBD MD products are drugs, which is contrary to the FDCA, the Federal Trademark Commission Act, and comparable state laws and rules. Indeed, since at least May 2019, Majik has advertised and promoted its products using a symbol that is used by doctors:



17. Majik purports to be the owner of U. S. Trademark Reg. No. 5,173,264 ("CBD MD Mark") for the mark CBD MD in Classes 003 for skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing Cannabidiol ("CBD"), and 005 for medicinal creams for skin care; medicinal herbal preparations; medicinal oils; herbs for medicinal purposes; all of the aforementioned containing CBD. **Exhibit A**.

18. On February 21, 2016, Majik applied for the CBD MD Mark under 15 U.S.C. § 1051(b) as an intent-to-use application and it was labeled as U.S. Trademark Application No 86914580. **Exhibit B**.

19. On June 14, 2016, the PTO issued an Office Action for the CBD MD application. On December 14, 2016, Majik filed a Response to Office Action. Majik argued that its CBD MD products would not violate the Controlled Substances Act. No mention was made of the FDCA. **Exhibit C**.

20. On December 14, 2016, Majik filed an Amendment to the registration application cancelling Class 35 and amending the description of Class 003 and 005 to specify that "all of the aforementioned [materials] containing CBD." Accordingly, all of the products described for the mark contain CBD, but the descriptions do not indicate the level of tetrahydrocannabinol ("THC"). **Exhibit D**. No mention was made of the FDCA.

21. On December 14, 2016, Majik filed an Amendment to Allege Use under 15 U.S.C. § 1051(c) along with a specimen. Majik amended its date of first use to February 21, 2016. **Exhibit D**.

22. Majik submitted a declaration to the PTO on December 14, 2016, when it filed a Combined Response to Office Action and an Amendment to Allege Use declaring that CBD MD was in use in commerce as of February 21, 2016. **Exhibit D**. No mention was made of the FDCA.

23. The PTO issued the registered CBD MD Mark to Majik on March 28, 2017. The mark is not incontestable.

24. On April 16, 2019, CBDMD, through an affiliated entity, filed a petition to cancel Majik's registration for its CBD MD Mark, which is pending before the PTO's Trial and Appeals Board ("TTAB"). CBDMD will ask the TTAB to stay that proceeding, pending this case.

25. On or about September 19, 2019, Majik posted on its Facebook page, which is incorporated by reference, a false statement disparaging CBDMD:



Majik's post falsely represented that its "Trademark was properly awarded," knowing that its use of the trademark in connection with a CBD food or dietary supplement product was not authorized under the FDCA. Majik also knew that its CBD MD Mark should be cancelled because, among other things, it fails to function as a mark, and because Majik lacked a bone fide intention to lawfully use the mark.

### C. RELEVANT TRADEMARK LAW

26. To qualify for federal registration, the use of a mark in commerce must be lawful. *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987) ("A valid application cannot be filed at all for registration of a mark without 'lawful use in commerce'"); *John W. Carson Found. v. Toilets.com, Inc.*, 94 USPQ2d 1942 (2010) (TTAB 2010) (it was not a lawful use in commerce to use a mark in violation of a court injunction based on a state law claim); *In re Stellar Int'l, Inc.*, 159 USPQ 48, 50-51 (TTAB 1968); *Coahoma Chemical Co., Inc. v. Smith*, 113 USPQ 413 (Com'r Pat. & Trademarks 1957) (the "use of a mark in connection with unlawful shipments in interstate commerce is not use of a mark in commerce which the [PTO] may recognize."); TMEP § 907.

27. The goods to which the mark will be applied must comply with all applicable federal laws. *See In re Brown*, 119 USPQ2d 1350, 1351 (TTAB 2016) (citing *In re Midwest*

6

Case 3:21-cv-00069-RJC-DCK   Document 1   Filed 02/12/21   Page 6 of 20

*Tennis & Track Co.*, 29 USPQ2d 1386, 1386 n.2 (TTAB 1993) ("It is settled that the Trademark Act's requirement of 'use in commerce,' means a 'lawful use in commerce'")); *In re Pepcom Indus., Inc.*, 192 USPQ 400, 401 (TTAB 1976) ("In order for [an] application to have a valid basis that could properly result in a registration, the use of the mark [has] to be lawful, i.e., the sale or shipment of the product under the mark [has] to comply with all applicable laws and regulations. If this test is not met, the use of the mark fails to create any rights that can be recognized by a Federal registration."). And "[w]hen the sale or transportation of any product for which registration of a trademark is sought is regulated under an Act of Congress, the [PTO] may make appropriate inquiry as to compliance with such Act for the sole purpose of determining lawfulness of the commerce recited in the application." 37 C.F.R. § 2.69.

28. If the record in an application based on Trademark Act Section 1(a) indicates that the mark itself or the identified goods or services violate federal law, registration must be refused under Trademark Act Sections 1 and 45, based on the absence of lawful use of the mark in commerce. *See* 15 U.S.C. §§ 1051, 1127; 37 C.F.R. § 2.69; *In re Stellar Int'l, Inc.*, 159 USPQ 48, 50-51 (TTAB 1968).

29. For applications based on Trademark Act Section 1(b), 44, or 66(a), if the record indicates that the mark or the identified goods or services are unlawful, actual lawful use in commerce is not possible. *See In re PharmaCann LLC*, 123 USPQ2d 1122, 1124 (TTAB June 16, 2017); *In re JJ206, LLC*, 120 USPQ2d 1568, 1569 (TTAB 2016); *John W. Carson Found.*, 94 USPQ2d at 1948. Thus, a refusal under Trademark Act Sections 1 and 45 is also appropriate for these non-use-based applications, because the applicant does not have a bona fide intent to lawfully use the mark in commerce. *See* 15 U.S.C. §§1051, 1127; *In re PharmaCann LLC*, 123 USPQ2d at

1124; *In re JJ206, LLC*, 120 USPQ2d 1568, 1569 (TTAB 2016); *John W. Carson Found.*, 94 USPQ2d at 1948. These allegations are further set forth below.

### D. CSA AND LOUISIANA LAW

30. Majik's CBD products covered by the CBD MD Mark were and are unlawful under federal and state drug laws and the federal FDCA. The PTO has specified that a determination of whether commerce involving cannabis and cannabis-related goods and services is lawful requires consultation of several different sources, including the CSA, 21 U.S.C. § 801 *et seq.*, the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the 2018 Farm Bill), which amends the Agricultural Marketing Act of 1946.

#### 1. CSA

31. "[W]here the identified goods are illegal under the federal Controlled Substances Act (CSA), the applicant cannot use its mark in lawful commerce, and 'it is a legal impossibility' for the applicant to have the requisite bona fide intent to use the mark." *In re JJ206, LLC*, 120 USPQ2d at 1569.

32. At the time of filing, the CSA prohibited the manufacturing, distributing, dispensing, or possessing certain controlled substances, including marijuana and marijuana-based preparations. 21 U.S.C. §§ 812, 841(a)(1), 844(a); *see also* 21 U.S.C. § 802(16) (defining marijuana). The Drug Enforcement Administration (DEA) interpreted the CSA and DEA regulations to declare any product that contains any amount of tetrahydrocannabinols (THC) to be a schedule I controlled substance, even if such product is made from portions of the cannabis plant that are excluded from the CSA definition of marihuana and that the listing of THC in schedule I refers to both natural and synthetic THC. 66 Fed. Reg. 51529 (Oct. 9, 2001).

33. In December 2016, DEA issued guidance on the definition of marijuana and extracts from marijuana which can include CBD under new Schedule I Drug Code 7350, which is called "marijuana extract." The new 7350 Drug Code has been interpreted by the DEA as including extracts comprised of cannabinoids from cannabis plants including CBD, thus making CBD illegal at the federal level.

34. On December 2, 2018, the Agriculture Improvement Act of 2018, commonly known as the Farm Bill, was signed into law, amending the Agriculture Marketing Act of 1946 (AMA) to remove "hemp" from the CSA's definition of marijuana. *See* Pub. L. No. 115-334 (Dec. 20, 2018); 21 U.S.C. §§ 801-971.

35. As of February 21, 2016, Majik's alleged date of first use of its CBD MD Mark, all cannabinoids, including CBD, were illegal in Louisiana. That law was not changed until 2019. *See, e.g.,* La. Rev. Stat. 40:964; La. Act No. 164 (June 6, 2019); **Exhibit E** (La. Bd. of Pharmacy Guidance Document re Cannabidol (CBD) Oil (Nov. 14, 2018) (CBD Oil is illegal under federal or state law)); **Exhibit F**. As of February 21, 2016, it was not lawful to market CBD containing materials in Louisiana, where Majik is registered, or in interstate commerce. Accordingly, any commerce of the Majik products – all of which contain CBD – would have been unlawful. *See* **Exhibit F** ("Louisiana law does not make a distinction between CBD extracted from hemp and CBD extracted from marijuana" and CBD is not legal in Louisiana).

36. The PTO instructed that for trademark applications filed on or after December 20, 2018 that identify goods encompassing cannabis or CBD, the 2018 Farm Bill could potentially remove the CSA as a ground for refusal of registration, but only if the goods are derived from "hemp." If an applicant's goods are derived from "hemp" as defined in the 2018 Farm Bill, the PTO instructed applicants that the *identification* of goods must specify that they contain less than

9

Case 3:21-cv-00069-RJC-DCK   Document 1   Filed 02/12/21   Page 9 of 20

0.3% THC. Thus, the scope of the resulting registration would be limited to goods compliant with federal law. *See* PTO Examination Guide 1-19: Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill (May 2, 2019)

37. Majik's assertion of first use of February 21, 2016 is false because there could not have been a bona fide intention to legally use or a bona fide use of the mark at issue. *See* 15 U.S.C. §§ 1051(b), 1127; 37 C.F.R. § 2.69.

38. The PTO instructed that for applications filed *before* December 20, 2018 that identify goods encompassing CBD or other cannabis products, registration will be refused due to the unlawful use or lack of bona fide intent to use in lawful commerce under the CSA. Such applications did not have a valid basis to support registration at the time of filing because, according to the PTO, the goods violated federal law. Majik's filed its trademark application in 2016 and the PTO issued the registered mark in 2017 – long before the change to the law in the 2018 Farm Bill. As such, the CSA and Louisiana law did not – and do not – entitle Majik to its Registration for the CBD MD Mark.

### 3. FDCA

39. The FDCA prohibits the introduction or delivery for introduction into interstate commerce of a food to which has been added a drug or a biological product for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public. 21 U.S.C. § 331(ll); *see also* 21 U.S.C. § 321(ff) (indicating that a dietary supplement is deemed to be a food within the meaning of the Federal FDCA). The Food and Drug Administration ("FDA") has determined that substantial clinical investigations of cannabidiol have begun and thus products containing cannabidiol may not be sold as dietary supplements. *See* FDA and Marijuana: Questions and Answers, available at

http://www.fda.gov/newsevents/publichealthfocus/ucm421168.htm#dietarysuppl;

https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd#legaltosell (revised Oct. 1, 2020).

40. An article that has been authorized for investigation as a new drug or as a biologic before being marketed as a food or as a dietary supplement cannot be marketed as a dietary supplement if substantial clinical investigations of the article have begun and the existence of such investigations has been made public. Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues (Aug. 2016), available at https://www.fda.gov/media/99538/download.

41. This case pertains to CBD, a naturally occurring compound found in the resinous flower of cannabis, a plant with a history as a medicine going back thousands of years. Today the therapeutic properties of CBD are being tested and confirmed by scientists and doctors around the world. MD is an abbreviation for the Latin title Medicinae Doctor, Doctor of Medicine. The use of MD on goods or services implies that the good or service is formulated or designed to improve the user's health. The combined terms of CBD and MD signify cannabidiol for some medical use. In addition, CBD MD sells its products to consumers using its corporate name, Majik Medicine. With one limited exception not applicable here, CBD products cannot be sold to the public as medicine or drugs. Merriam-Webster defines "medicine" to include a substance or preparation used in treating disease and that medicine and drugs are synonyms.

42. Majik's Registration for the CBD MD Mark includes goods described as "medicinal herbal preparations; medicinal oils; herbs for medicinal purposes." Each of these goods could be formulated as edible by Majik, thus being in violation of the FDCA. While Majik argued

to the Examiner that it products were lawful under the CSA, it made no such argument as to the FDCA.

43. The FDA also takes the position that it is unlawful to introduce food or beverages containing added CBD into interstate commerce or to market CBD as, or in, dietary supplements, regardless of whether the substances are hemp-derived. *See Statement from FDA Commissioner Scott Gottlieb, M.D., on signing of the Agriculture Improvement Act and the agency's regulation of products containing cannabis and cannabis-derived compounds* (https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm628988.htm).

44. In addition, an unapproved new drug cannot be distributed or sold in interstate commerce unless it is the subject of an FDA-approved new drug application (NDA) or abbreviated new drug application (ANDA). 21 U.S.C. §§ 331(d) and 355(a), (b), & (j); FDA Regulation of Cannabis and Cannabis-Derived Products: Questions and Answers (https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd#qandas). Majik's products are comprised of cannabidiol and are promoted to have therapeutic or medical benefits that affect the structure or function of the body. *See* **Exhibit C**.

45. The FDA takes the position that a company cannot legally market any CBD product as a dietary supplement under the FDCA. The FDA has issued dozens of warning letters to CBD companies. *See, e.g.*, Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds, 84 Fed. Reg. 12969 (Apr. 3, 2019); FDA News Release, *FDA warns 15 companies for illegally selling various products containing cannabidiol as agency details safety concerns* (Nov. 25, 2019) (https://www.fda.gov/news-events/press-

announcements/fda-warns-15-companies-illegally-selling-various-products-containing-cannabidiol-agency-details).

46. The PTO has also indicated that registration of marks for foods, beverages, dietary supplements, or pet treats containing CBD will still be refused as unlawful under the FDCA, even if derived from hemp, as such goods may not be introduced lawfully into interstate commerce. 21 U.S.C. § 331(ll).

47. The PTO's Trademark Trial and Appeals Board has also taken the position that CBD marks may not be registered at this time based on FDA's current stance that CBD products may not be sold in commerce under the FDCA.

48. That the trademark at issue at issue should be cancelled as illegal because of non-compliance with the FDCA and FDA's regulations is fully supported in the PTO's Examination Guide 1-19 at 2 and *In re Stanley Bros. Social Enterprs., LLC*, Serial No. 86568478, 2020 WL 3288093 (TTAB June 16, 2020). In *Stanley Bros.*, the TTAB ruled that a Colorado company was prohibited from registering the trademark "CW" for its CBD products because selling them is not permitted under the FDCA. The TTAB held that the examiner properly rejected registration of the mark under 15 U.S.C. § 1051 and 1127.

49. Majik's use of its CBD MD Mark for its CBD products for ingestion by humans in connection with the ® symbol, which represents as a matter of law that the products are legal and registered as a matter of trademark law, is unfair competition and false advertising that is likely to mislead consumers and harm CBDMD.

50. The documents attached or referred to in this pleading are incorporated herein by reference.

# CLAIM I
## (Request for Order of Cancellation of Trademark Registration
## 15 U.S.C. §§ 1119, 1064)

51. The foregoing allegations are incorporated here by reference.

52. Majik's Registration for the CBD MD Mark should be cancelled because Majik's sale of the relevant products are unlawful under the FDCA and the CSA, as alleged above. Majik's use of the CBD MD Mark in connection with the relevant products was also unlawful as of the date of its alleged first use, and as of the date that the CBD MD Mark was registered with the PTO.

53. Majik's Registration for the CBD MD Mark should also be cancelled because the CBD MD Mark fails to function as a mark. Registration of the CBD MD mark is also barred by Sections 14(1) and 2(e) of the Trademark Act of 1946 because the CBD MD Mark consists of a mark which, when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them.

54. The CBD MD Mark includes Class 003 for skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing CBD, and Class 005 for medicinal creams for skin care; medicinal herbal preparations; medicinal oils; herbs for medicinal purposes; all of the aforementioned containing CBD.

55. Majik made false representations to the PTO regarding material facts when its representatives signed declarations asserting ownership of the CBD MD mark. Majik submitted a false declaration to the PTO on December 14, 2016 when its representatives filed a Combined Response to Office Action and an Amendment to Allege Use declaring that CBD MD was in use in interstate commerce as of February 21, 2016. On information and belief, Majik's products were only offered for sale and sold in Louisiana (despite the fact that sales were illegal under that state's law). Majik thus made knowingly false misrepresentations to the PTO with the intent to deceive.

But for Majik's knowingly false representations, the PTO would not have registered the CBD MD Mark.

56. Majik is one source of goods bearing the descriptive phrase CBD MD. Majik is not, however, the only source of such goods as other vendors of products containing CBD sell goods bearing the phrase "CBD MD" which did not come from Majik.

57. The phrase "CBD MD" is widely used as descriptive phrase for products containing CBD including skin and body topical lotions, creams and oils for cosmetic use and for medicinal creams for skin care, medicinal herbal preparations, medicinal oils, and herbs for medicinal purposes. The phrase CBD MD is a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient. It is of unknown origin and has been used on many kinds of goods that do not original from Majik.

58. Majik's CBD MD mark is incapable of distinguishing the goods of Majik from the goods of others and therefore cannot function as a trademark and an indicator of source.

59. A mark is merely descriptive under Trademark Act § 2(e)(1), 15 U.S.C. § 1052(e)(1), if it describes an ingredient, quality, characteristic, function, feature, purpose or use of the relevant goods or services.

60. The determination of whether a mark is merely descriptive must be made in relation to the identified goods or services, and not in the abstract. It is not necessary that a term describe all of the purposes, functions, characteristics or features of the goods or services. It is enough if the term describes one significant attribute of the goods or services. CBD MD does not act as a mark.

61. CBDMD has been damaged by the registration. Majik is using its trademark registration to falsely claim differences with CBDMD and others in advertising and promoting

15

Case 3:21-cv-00069-RJC-DCK   Document 1   Filed 02/12/21   Page 15 of 20

Majik's products. In addition, CBDMD, through its affiliated entities, has applied for several registered trademarks that the CBD MD mark could block once regulatory issues under the FDCA have been resolved by Congress or the Food and Drug Administration. The mark is also likely to cause confusion as to the source, quality and legal status of CBD products sold by Majik and CBDMD.

## CLAIM II
### (Lanham Act § 43(a))

62. The foregoing allegations are incorporated here by reference.

63. Majik's products and services are offered for sale, sold, and used in interstate and foreign commerce.

64. In connection with its goods or services, Majik has used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact, which are in commercial advertising or promotion (including without limitation its website, promotional materials, and labels), and Majik misrepresents the nature, characteristics, qualities, or geographic origin of its or CBDMD's goods, services, or commercial activities.

65. Majik knowingly and willfully made misrepresentations to the public. Majik advertises and promotes its services and products by using an invalid registered trademark, offering for sale and selling its dietary supplement and food products as drugs, and making false statements regarding CBDMD.

66. Majik's commercial messages and statements are either literally false or literally true but ambiguous and have the tendency to deceive the market, the public, consumers, potential consumers and competitors of CBDMD.

67. Majik's misrepresentations were material and made in bad faith for the purpose of deceiving the market, the public, consumers, potential consumers and competitors of CBDMD and harming its competition, including CBDMD.

68. The misrepresentations deceive or are likely to deceive the market, the public, consumers, potential consumers and competitors of CBDMD and Majik's products. Further, the misrepresentations are likely to influence the purchasing decisions of others and have caused injury or are likely to do so.

69. By reason of Majik's statements and conduct, Majik has willfully violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and CBDMD has suffered, and will continue to suffer damage to its business, reputation, and goodwill and has lost sales and profits that it would have made but for Majik's acts. CBDMD has suffered damages in an amount to be determined at trial plus interest and costs.

70. CBDMD has been irreparably harmed by Majik's acts and it should be preliminarily and permanently enjoined from further violation of the law.

## CLAIM III
### (State Law False Advertising and Unfair Competition)

71. The foregoing allegations are incorporated by reference.

72. As alleged above, Majik has made statements in its advertising that are false and misleading. Majik knew or by the exercise of reasonable care should have known that the statements were false and misleading.

73. Majik violated state law by engaging in the unlawful, unfair and fraudulent business acts or practices by engaging in the conduct alleged above, including its false and misleading statements and advertising about the compliance and safety of its dietary supplement ingredients and products to its customers and the public.

74. CBDMD has been economically aggrieved by Majik's unlawful business acts and practices as alleged, including the loss of money, property, and goodwill. As a result, CBDMD has suffered damages in an amount to be determined at trial in excess of $75,000 plus interest and costs.

75. CBDMD has been irreparably harmed and Majik should be preliminarily and permanently enjoined from further violation of the law.

## CLAIM IV
### (Trade Disparagement)

76. The foregoing allegations are incorporated by reference.

77. Majik has published false statements as to the business and trade of CBDMD, including its Facebook post displayed above.

78. Majik published the statement knowing that it was false or with reckless disregard of whether the statement is true or false.

79. Majik published the false statement with the intent, or reasonable belief, that the statement will cause financial loss for CBDMD.

80. CBDMD has incurred financial losses and will continue to incur such losses unless the false statements are removed and corrective disclosure is made. As a result, CBDMD has suffered damages in an amount to be determined at trial plus interest and costs.

81. CBDMD has been irreparably harmed and Majik should be preliminarily and permanently enjoined from further violation of the law.

## CLAIM V
### (Unfair & Deceptive Trade Practices)

82. The foregoing allegations are incorporated herein by reference.

83. Section 75-1.1 of the North Carolina General Statutes prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

84. Majik's misconduct, in engaging in false advertising, unfair competition and trade disparagement, all as described in detail above, constitutes a violation of N.C. Gen. Stat. § 75-1.1.

85. As a direct and proximate result of Majik's unfair competition and unfair and deceptive trade practices, as described above, CBDMD has suffered significant actual damages, in an amount to be established at trial but in any event in excess of $75,000.00.

86. Pursuant to N.C. Gen. Stat. § 75-16, CBDMD is entitled to have the amount of its actual damages trebled.

87. Majik has willfully engaged in the above-described unlawful acts or practices, and Majik has engaged in an unwarranted refusal to resolve the matters that constitute the basis of this civil action.

88. By reason of the foregoing, CBDMD requests that this Court award CBDMD its reasonable attorney's fees incurred in the prosecution of this action, pursuant to N.C. Gen. Stat. § 75-16.1.

## REQUEST FOR RELIEF

CBDMD requests the following relief:

a. judgment in its favor on all claims against Majik;

b. cancellation of U. S. Trademark Reg. No. 5,173,264;

c. judgment for damages in an amount to be determined at trial in excess of $75,000 exclusive of interest and costs, as well as pre- and post-judgment interest;

d. a preliminary and permanent injunction against Majik and those acting in concert with it against continued violations of the Lanham Act and state law;

e. punitive and enhanced or trebled damages as allowed by law;

f. reasonable attorneys' fees as allowed by law;

g. costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

h. such other relief as the Court deems just and appropriate under the circumstances

Dated: February 12, 2021

Respectfully submitted,

*s/ Mark R. Kutny*
Mark R. Kutny, N.C. State Bar No. 29306
*Attorneys for Plaintiff*
Hamilton, Stephens Steele + Martin, PLLC
525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
Email: mkutny@lawhssm.com

Of Counsel:

Kevin M. Bell
Scott A.M. Chambers, Ph.D.
Richard J. Oparil
Caroline M. Maxwell
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
(202) 677-4030

Andrew C. Stevens
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
(404) 873-8734