## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF NORTH CAROLINA

CBD INDUSTRIES, LLC,

        **Plaintiff and
Counterclaim
Defendant,**

v.

MAJIK MEDICINE, LLC,

        **Defendant and
Counterclaim
Plaintiff,**

v.

cbdMD, Inc.,

        **Counterclaim
Defendant.**

**Civil Action No. 3:21-cv-69-RJC-DCK**

**JURY TRIAL DEMANDED**

## DEFENDANT'S FIRST AMENDED ANSWER, DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT

COMES NOW Defendant, Majik Medicine, LLC, ("Majik" or "Defendant") and submits Defendant's First Amended Answer, Defenses, Counterclaims and Third Party Complaint as follows:

## FIRST AMENDED ANSWER AND DEFENSES

Responding to the numbered paragraphs of the Complaint, Defendant states as follows:

1. Admitted that Defendant holds a registered trademark for CBD MD, which was obtained in 2017. Defendant denies the remaining allegations of paragraph 1.

2. Admitted.

3.  Admitted that Majik is a limited liability company having a place of business at 629 Village Lane South, Mandeville, Louisiana, 70471; and that the current members of Defendant include Brenda N. Kraft ("Kraft"), Christy Peachey ("Peachy"), Daniel Sinclair ("Sinclair") and David Ross Clement ("Clement"), all of whom are United States citizens and residents of Louisiana. Defendant denies the remaining allegations of paragraph 3.

4.  Paragraph 4 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 4.

5.  Paragraph 5 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 5.

6.  Paragraph 6 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 6.

7.  Paragraph 7 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 7.

8.  Admitted.

9.  Admitted that CBD is a natural substance produced from the hemp plant. Defendant denies the remaining allegations of paragraph 9.

10.  Denied.

2

11. Denied. Defendant further avers that, upon information and belief, it is Plaintiff's parent entity, cbdMD, Inc. (hereinafter the "Parent Corporation"), that is known to produce and sell CBD products under its alleged CBDMD™ brand.

12. Admitted that affiliated entities to Plaintiff improperly applied to register certain trademarks, which have not been and should not be issued. Defendant denies the remaining allegations of paragraph 12.

13. Admitted that on December 21, 2011, Kraft and Peachy formed Defendant under the laws of Louisiana and that Sinclair, Kraft and Peachey are, together with Clement, currently the members of Defendant. Defendant denies the remaining allegations of paragraph 13.

14. Admitted.

15. Denied.

16. Denied.

17. Admitted.

18. Admitted.

19. Admitted that the PTO issued an Office Action for the CBD MD application and that on December 14, 2016, Defendant filed a Response to the Office Action. The Office Action and Defendant's Response are documents, the contents of which speak for themselves. To the extent the allegations of paragraph 19 are inconsistent with the contents of these documents, Defendant denies them. Defendant denies the remaining allegations of paragraph 19.

Defendant further avers that it fully responded to all the issues raised by the trademark examiner in the Office Action.

20. Admitted that Defendant filed an amendment to its registration application for the CBD MD mark. The amendment is a document, the contents of which speaks for itself. To the extent the allegations of paragraph 20 are inconsistent with the contents of the amendment, Defendant denies them. Defendant denies the remaining allegations of paragraph 20. Defendant further avers that it fully responded to all the issues raised by the trademark examiner in the Office Action.

21. Admitted.

22. Admitted that Defendant submitted a declaration to the PTO when it filed a Combined Response to Office Action and an Amendment to Allege Use. The declaration, Combined Response, and Amendment are documents, the contents of which speak for themselves. To the extent the allegations of paragraph 22 are inconsistent with the contents of these documents, Defendant denies them. Defendant denies the remaining allegations of paragraph 22 including, but not limited to, any implication that Defendant's Amendment to allege use must mention the FDCA.

23. Admitted.

24. Admitted that Plaintiff filed a pending cancellation proceeding (Cancellation Proceeding # 92071109) in which there currently is a pending Motion to Stay filed by the Plaintiff and Motion for Summary Judgement filed by Defendant. Defendant denies the remaining allegations of paragraph 24 including, but not

4

limited to, that the cancellation proceeding was filed "through an affiliated entity" of the Plaintiff.

25. Denied.

26. Paragraph 26 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 26. Defendant further denies any implication that Defendant's CBD products sold under its CBD MD mark were, or are, unlawful under relevant federal or state laws in a manner that would negate the federal trademark registration.

27. Paragraph 27 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 27.

28. Paragraph 28 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 28.

29. Paragraph 29 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 29.

30. Denied.

31. Paragraph 31 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 31.

32. Paragraph 32 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 32.

33. Paragraph 33 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 33.

34. Paragraph 34 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 34.

35. Denied.

36. Admitted that the United States Patent and Trademark Office ("USPTO") has issued guidelines for applications that identify goods encompassing CBD and has guidelines to facilitate registration of such marks. Defendant denies the remaining allegations of paragraph 36.

37. Denied.

38. Admitted that the USPTO has issued guidelines for applications that identify goods encompassing CBD and has guidelines to facilitate registration of such marks; that Defendant filed its trademark application for CBD MD in 2016 and that the USPTO issued the registered mark in 2017. Defendant denies the remaining allegations of paragraph 38.

39. Paragraph 39 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 39.

40. Paragraph 40 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 40.

41. Admitted that CBD is a naturally occurring compound with a history going back thousands of years and that the therapeutic properties of CBD are currently being tested by scientists and doctors arounds the world. Defendant denies the remaining allegations of paragraph 41.

42. Denied that Defendant's CBD products sold under its CBD MD mark were, or are, unlawful under relevant federal or state laws in a manner that would negate the federal trademark registration. It is further denied that CBD products sold at the relevant times in this matter, such as by the Defendant or the Parent Corporation, were or are unlawful *per se* under relevant federal or state laws. Defendant denies the remaining allegations of paragraph 42.

43. Paragraph 43 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 43.

44. Paragraph 44 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 44.

45. Paragraph 45 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 45.

46. Denied.

47. Paragraph 47 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 47.

48. Denied.

49. Denied.

50. The Defendant is not required to admit or deny this statement. To the extent a response is required, Defendant denies the allegations of paragraph 50.

**CLAIM I**
**(Request for Order of Cancellation of Trademark Registration,**
**15 U.S.C. §§ 1119, 1064)**

51. Defendant incorporates by reference its foregoing responses to the Complaint as if set forth fully herein.

52. Denied.

53. Denied.

54. Admitted with regard to the goods listed associated with the Defendant's mark in the subject registration. Defendant further avers that it has common law uses of the mark CBD MD outside of the listed registration goods, including services associated with educational seminars for doctors relating to CBD.

55. Denied.

56. Admitted that Defendant is a source of goods under the Defendant's mark CBD MD. Defendant denies the remaining allegations of paragraph 56.

57. Denied. Defendant further avers that any suggestion by Plaintiff that CBD MD is a descriptive phrase is counter to the sworn statements Plaintiff made in its trademark registration filings for their alleged CBDMD marks.

58. Denied.

59. Paragraph 59 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 59.

60. Denied that CBD MD does not act as a mark. The rest of paragraph 60 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of paragraph 60.

61. Admitted that the Defendant's registered mark should block registration applications of the Plaintiff for confusing similar marks. Admitted that the alleged CBDMD marks of Plaintiff, and/or Parent Corporation, will cause confusion with the goods and services sold by Defendant under the subject CBD MD mark. Defendant denies the remaining allegations of paragraph 61.

## CLAIM II
## (Lanham Act § 43(a))

62. Defendant incorporates by reference its foregoing responses to the Complaint as if set forth fully herein.

63. Admitted.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

## CLAIM III
### (State Law False Advertising and Unfair Competition)

71. Defendant incorporates by reference its foregoing responses to the Complaint as if set forth fully herein.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

## COUNT IV
### (Trade Disparagement)

76. Defendant incorporates by reference its foregoing responses to the Complaint as if set forth fully herein.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

## CLAIM V
### (Unfair & Deceptive Trade Practices)

82. Defendant incorporates by reference its foregoing responses to the Complaint as if set forth fully herein.

83. Paragraph 83 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of paragraph 83.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

EXCEPT AS EXPRESSLY ADMITTED, DEFENDANT DENIES EACH AND EVERY
ALLEGATION IN THE COMPLAINT.

## FIRST DEFENSE
### BAD FAITH

Defendant hereby claims the affirmative defense of bad faith prevents Plaintiff from prevailing on the claims set forth in its Complaint. The Parent Corporation, then known as Level Brands, Inc, adopted a mark CBDMD for CBD products which was and is confusingly similar to Defendant's mark. As detailed herein, Defendant sent a cease-and-desist letter from Defendant in September 2018 to an entity related to the Parent Corporation. The Parent Corporation, initially through another related entity and then through the Plaintiff, engaged in negotiations with the Defendant in bad faith regarding their use of the subject mark beginning around October of 2018. When the parties were unable to work out a reasonable license arrangement that protected the registered trademark and the public, then the Parent Corporation together with the Plaintiff continued with a more blatant attempt to usurp the mark in question.

The Plaintiff was formed on or about November 26, 2018 and originally named cbdMD LLC in a nefarious attempt to usurp the trademark rights of the Defendant, despite the allegedly ongoing good faith negotiations with the Defendant. The managing member of the Plaintiff is the Parent Corporation cbdMD, Inc. (formerly known as Level Brands, Inc).

11

On December 20, 2018, Cure Based Development LLC, a Nevada limited liability company, and believed to be related to the Plaintiff, filed the trademark applications on the marks CBDMD SYNERGY and SYNERGY CBDMD in a nefarious attempt to usurp the trademark rights of the Defendant. Cure Based Development LLC was merged with/into the Plaintiff on or about December 21, 2018. Cure Based Development LLC was listed as the purported owner in a fraudulent attempt to create a listing of apparent distinct parties using marks similar to CBD MD. Cure Based Development LLC is not, and was not, the proper owner or user of the marks CBDMD SYNERGY and SYNERGY CBDMD.

On or about April 22, 2019 Level Brands, Inc. fraudulently changed its name to cbdMD, Inc. in continuance of a nefarious attempt to usurp the trademark rights of the Defendant.

Beginning on May 29, 2019, the Plaintiff, filed trademark applications on the mark CBDMD in a nefarious attempt to usurp the trademark rights of the Defendant. One application lists a purported date of first use of May 24, 2017, prior to the formation of the Plaintiff, and included the sworn statement that "to the best of the signatory's knowledge and belief, no other person, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such persons, to cause confusion or mistake, or to deceive" and further that "to the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contention made above have factual support."

Plaintiff is not the actual owner or user of the CBDMD marks for which it fraudulently filed trademark applications.

The Plaintiff filed a cancellation proceeding regarding Defendant's CBD MD mark in bad faith with no intentions of pursuing that action and merely to add to the legal costs of the Defendant. The Plaintiff filed complaints that were not well based in fact or law and routinely did not participate in the prosecution the Cancellation Proceeding that they filed for no legitimate purpose.

The Plaintiff, itself or through/by related companies, engaged in bad faith negotiations regarding use of the mark in question. It then proceeded itself or through related companies, inequitably and unconscionably to adopt the equivalent of the mark in question as both corporate names and brand names. The Plaintiff then proceeded, itself or through related companies, with its own trademark application filings in bad faith despite the knowledge of the Defendant's mark and use in commerce. The Plaintiff filed and failed to prosecute a cancellation proceeding in bad faith.

The Plaintiff, itself or through/by related companies, is knowingly and willingly selling CBD goods substantially overlapping with the Defendant's goods and any alleged illegality of the Defendant's goods, which is denied, would equally apply to the alleged goods of the Plaintiff.

The Doctrine of bad faith prevents the Plaintiff from proceeding with this cancellation and with other counts in this action.

<div align="center">

**SECOND DEFENSE**
**UNCLEAN HANDS**

</div>

As outlined herein and above in Defendant's First Defense, which is incorporated by reference, the Plaintiff is not entitled to obtain an equitable remedy because the plaintiff is acting unethically with respect to the subject of the Complaint, that is, with "unclean hands." The

doctrine of unclean hands prevents the Plaintiff from proceeding with this cancellation and with other counts in this action.

<div align="center">

**THIRD DEFENSE**
**ESTOPPEL**

</div>

The Plaintiff is proceeding for cancellation of the Defendant's mark on at least two grounds: (i) "Lack of Use or Intention to Use the Mark" and (ii) that CBD MD fails to function as a mark. On May 29, 2019, the Plaintiff filed the trademark applications on the alleged mark CBDMD, which list a purported date of first use of May 24, 2017, and included the sworn statement that "to the best of the signatory's knowledge and belief, no other person, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such persons, to cause confusion or mistake, or to deceive" and further that "to the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contention made above have factual support." The sworn statements of the Plaintiff in these trademark applications contradict these grounds of cancellation presented herein and the Plaintiff should be estopped from asserting each of these grounds based upon the sworn allegations of Plaintiffs' subject applications.

In an earlier filed co-pending cancellation proceeding filed by the Plaintiff, the Plaintiff asserted numerous grounds that were not well founded in fact or law. The TTAB struck down all those ill-founded grounds, specifically striking seven grounds and leaving only two grounds: (i) "Lack of Use or Intention to Use the Mark" and (ii) that CBD MD fails to function as a mark, with the later count maintained solely upon misrepresentations of the Plaintiff that contradict statements in their own trademark filings and are not supported by any known facts. The Plaintiff herein reiterates many of the ill-founded allegations recklessly asserted in the earlier

cancellation proceeding. The Plaintiff should be estopped from asserting each of these grounds already addressed and dismissed by the TTAB.

The Parent Corporation asserts on its website that the 2018 Farm Bill "fully legalized hemp, thus opening the doors for a wide variety of hemp-based products" such that "people have a wide variety of options when choosing CBD." The Parent Corporation admits on its website that CBD oil is federally legal if it derives from industrial hemp that contains less than 0.3% THC.

The Plaintiff, itself or through/by related companies, is knowingly and willingly selling CBD goods substantially overlapping with the Defendant's goods and any alleged illegality of the Defendant's goods would equally apply to the alleged goods of the Plaintiff such that the Plaintiff should be estopped from asserting cancellation of the Defendant's mark on these grounds, as well as proceeding on other grounds in this action.

## <u>FOURTH DEFENSE</u>

### DEFENDANT IS AT LEAST ENTITLED TO A REGISTRATION WITH PARTICULAR RESTRICTIONS

The Defendant is entitled to the registration for its CBD MD mark as issued. However, if the Court finds that the registration requires modifications to the filing date, date of first use, and/or limitations on the goods to clarify compliance with existing law then the Defendant would request the entry of amendments to the registration to satisfy these requirements pursuant to 15 U.S.C §1119. Pleading requirements in cancellation petitions suggest the Defendant list these possible restrictions. In satisfaction of this requirement the Defendant asserts that these restrictions are believed to be set forth in USPTO examination guidelines for CBD marks or goods which has been cited by the Plaintiff, and which are incorporated herein by reference. The

Defendant asserts that this defense is plead in the alternative and Defendant is entitled to the registration as issued.

<div align="center">

**FIFTH DEFENSE**

**LACK OF STANDING**
</div>

The Plaintiff has based standing in this suit on being the owner of alleged CBDMD marks and being a competitor of the Defendant. However, all of the subject CBDMD marks are used on goods sold by the Parent Corporation, cbdMD, Inc., rather than Defendant. Further, cbdMD, Inc. controls the nature and quality of goods sold under the CBD MD trademarks sought to be registered by the Plaintiff. It is cbdMD, Inc., and not the Plaintiff, that is the proper owner of trademark rights in the subject CBDMD marks, if any (which is denied), for which applications for federal registrations have been applied by the Plaintiff.

The Plaintiff is not known to have sold any products and no sales are known to have inured to the benefit of Plaintiff. Accordingly, the Plaintiff lacks standing to bring this suit

<div align="center">

**SIXTH DEFENSE**

**LACK OF ACTUAL INJURY**
</div>

All of the subject CBDMD marks are used on goods sold by the Parent Corporation, cbdMD, Inc., rather than Plaintiff. Further, cbdMD, Inc. controls the nature and quality of goods sold under the CBD MD trademarks sought to be registered by the Plaintiff. It is cbdMD, Inc., and not the Plaintiff, that is the proper owner of trademark rights in the subject CBDMD marks, if any (which is denied), for which applications for federal registrations have been applied by the Plaintiff.

The Plaintiff is not known to have sold any products and no sales are known to have inured to the benefit of Plaintiff.  Accordingly, the Plaintiff has not been injured by the alleged actions of the Defendant raised in this suit.

## SEVENTH DEFENSE

### REAL PARTY IN INTEREST

The Plaintiff has based standing in this suit on being the owner of alleged CBDMD marks and being a competitor of the Defendant.  However, all of the subject CBDMD marks are used on goods sold by the Parent Corporation, cbdMD, Inc., rather than Plaintiff.  Further, cbdMD, Inc. controls the nature and quality of goods sold under the CBD MD trademarks sought to be registered by the Plaintiff.  It is cbdMD, Inc., and not the Plaintiff, that is the proper owner of trademark rights in the subject CBDMD marks, if any (which is denied), for which applications for federal registrations have been applied by the Plaintiff.

The Plaintiff is not known to have sold any products and no sales are known to have inured to the benefit of Plaintiff.  Accordingly, the Plaintiff is not the real party in interest regarding this subject matter of this suit.

## EIGHTH DEFENSE

### FAILURE TO STATE A CLAIM

As supported in this Amended Answer and Counterclaims, the Defendant hereby asserts the defense of failure to state a claim upon which relief may be granted, which bars the Plaintiff from proceeding in whole or in part with the counts in its Complaint.

In the earlier filed co-pending cancellation proceeding filed by the Plaintiff, the Plaintiff asserted numerous grounds that were not well founded in fact or law. The TTAB struck down all

those ill-founded grounds except for two grounds listed above in a partial granting of a rule 12(b)(6) motion. The arguments set forth in the prior 12(b)(6) motion filed in the cancellation proceeding are equally applicable here and are incorporated herein by reference. The counts beyond cancellation are based upon the Defendant's alleged improper registration, and as the registration is not and should not be cancelled the remaining counts should also fail.

## NINTH DEFENSE

### GOOD FAITH

The Defendant has acted in good faith at all times. Defendant owns a valid trademark registration for the non-descriptive mark CBD MD. Statements made by Defendant regarding its products and services are not misleading nor deceptive. These facts bar some or all of the Plaintiff's counts.

## TENTH DEFENSE

Defendant's investigation into Plaintiff's claims and allegations is ongoing. Defendant reserves the right to seek leave to amend or add to its defenses after a reasonable opportunity for appropriate discovery, as allowed by the Court.

## FIRST AMENDED COUNTERCLAIMS and THIRD-PARTY COMPLAINT

### *INTRODUCTION*

This action remains a blatant attempt of a multimillion dollar corporation (Counterclaim-Defendant cbdMD, Inc., i.e., the "Parent Corporation") to usurp the legitimate trademark rights of a smaller competitor, Defendant and Counterclaim-Plaintiff MAJIK MEDICINE, LLC ("Majik" or "Defendant"), with prior trademark rights.

For its Counterclaims, Defendant Majik Medicine, LLC alleges and says as follows:

1. The foregoing responses, statements and allegations of Defendant's Answer and Defenses are incorporated by reference as if fully set forth herein.

*PARTIES*

2. Defendant and Counterclaim Plaintiff Majik Medicine LLC is a Louisiana limited liability company having a principal place of business and headquarters located at 629 Village Lane South, Mandeville, Louisiana. The current members of Defendant include Brenda N. Kraft ("Kraft"), Christy Peachey ("Peachy"), Daniel Sinclair ("Sinclair") and David Ross Clement ("Clement"). Each of the members is a resident of the State of Louisiana.

3. Plaintiff and Counterclaim Defendant CBD Industries, LLC, formerly known as CBDMD LLC ("Plaintiff"), is a North Carolina limited liability company having a principal place of business and headquarters located at 8845 Red Oak Boulevard, Charlotte, North Carolina. Upon information and belief, cbdMD, Inc. is the sole member of Plaintiff and is believed to be its Managing Member as well.

4. Third-Party and Counterclaim Defendant cbdMD, Inc. ("Parent Corporation") was formed on March 17, 2015 and was formerly known as Level Brands, Inc. and Level Beauty Group, Inc. Parent Corporation is a North Carolina corporation having a principal place of business and headquarters located at 8845 Red Oak Boulevard, Charlotte, North Carolina.

5.  The Counterclaims include claims for Trademark Infringement under 15 U.S.C. §1114 (Count I); Common Law Trademark Infringement (Count II); False Designation of Origin and False Descriptions under 15 U.S.C. §1125 (Count III); Cyber-Piracy under 15 U.S.C. §1125 (Count IV); Unfair and Deceptive Trade Practices and Unfair Competition under N.C. Gen. Stat. § 75-1.1, *et seq*. (Count V); Common Law Unfair Competition (Count VI); and Common Law Fraud (Count VII).

6.  This court has subject matter jurisdiction over the Counterclaims under 15 U.S.C. §1121, and 28 U.S.C. §§ 1331, 1332, 1338 and 1367. The amount in dispute exceeds $75,000 exclusive of costs and interest and attorney's fees.

7.  This court has personal jurisdiction over all the Counterclaim defendants who are North Carolina business entities, reside in North Carolina, and/or do business in this district, and venue in this district for the Counterclaims is proper under 28 U.S.C. §1391.

*DEFENDANT'S USE AND REGISTRATION OF ITS CBD MD MARK*

8.  Defendant has used the mark CBD MD in commerce in North Carolina and elsewhere for goods and services including: skin and body topical lotions, creams and oils for cosmetic use – all of the aforementioned containing CBD; and medicinal creams for skin care, medicinal herbal preparations, medicinal oils, herbs for medicinal purposes – all of the aforementioned containing CBD; and for educational seminars and discussions with medical professionals regarding the nature of CBD. CBD MD is a valid and registered trademark of Defendant.

9. Defendant is based in Louisiana and has worked with Louisiana as the state has updated it laws regarding CBD products. The state of Louisiana has conveyed approval of Defendant's product labels for sale in Louisiana and has granted Defendant a CBD DEALER PERMIT under permit number CBD.52.0000000330-O, which authorizes the Defendant to engage in the sale of hemp or hemp derived CBD products subject to state law.

10. On February 21, 2016, Defendant applied for the CBD MD registration under 15 U.S.C. § 1051(b) in the United States Patent and Trademark Office ("USPTO") as an intent-to-use trademark application and this application was assigned U.S. Trademark Application No 86/914,580.

11. On June 14, 2016, an Office Action was issued in the U.S. Trademark Application No 86/914,580 by the USPTO.

12. On December 14, 2016, an amendment was made in the U.S. Trademark Application No 86/914,580 cancelling Class 35 and amending the description of the goods in Class 003 and 005 in accordance with the examiner's suggestions. The description of goods was amended to define: International Class 003: Skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing CBD; and International Class 005: Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; Herbs for medicinal purposes; all of the aforementioned containing CBD.

13. On December 14, 2016 an Amendment to Allege Use was filed under 15 U.S.C. §1051(c) along with a specimen. In the Amendment to Allege Use the Defendant amended the intent to use application to indicate properly that the mark was first used

by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as February 21, 2016, and first used in commerce at least as early as February 21, 2016, and is now in use in such commerce for the goods identified in the registration. In addition to the use with the goods listed in the application, the mark CBD MD was used by the Defendant in other areas, including educational services for seminars and informal discussions given by the Defendant to medical professionals on CBD in general.

14. The amendment to allege use was reviewed by the examiner, approved and Registration No 5,173,264 was issued to Defendant on March 28, 2017 for the mark CBD MD, which registration is incorporated herein by reference.

15. The Defendant first used their mark CBD MD on or in connection with the sale of goods in interstate commerce including the following goods "Skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing CBD" and "Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; Herbs for medicinal purposes; all of the aforementioned containing CBD" at least as early as February 21, 2016.

16. The Defendant has continuously used their mark CBD MD in the ordinary course of trade on or in connection with the sale of goods in interstate commerce including the following goods "Skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing CBD" and "Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; Herbs for medicinal purposes; all of the aforementioned containing CBD" since at least as early as February 21, 2016.

17. The Defendant uses their mark CBD MD on both the product containers and the container packaging for their goods sold in commerce including the following goods "Skin and body topical lotions, creams and oils for cosmetic use; all of the aforementioned containing CBD" and "Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; Herbs for medicinal purposes; all of the aforementioned containing CBD".

18. The mark CBD MD has also been continuously used by the Defendant in educational services for seminars and informal discussions given by the Defendant to medical professionals on CBD in general since mid-2016.

19. No other persons have the right to use the mark CBD MD in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

20. The mark CBD MD of the Defendant is not a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient.

21. The mark CBD MD of the Defendant is capable of distinguishing, and does in fact distinguish, the goods of the applicant from the goods of others; it is a distinctive trademark of the Defendant's goods and services and can and does function as a trademark and an indicator of source.

### DEFENDANT'S AWARENESS OF INFRINGING ACTIVITY

22. In approximately September 2018, Defendant became aware of infringing activities of the Parent Corporation, namely the marketing of a line of oils and herbal

preparations containing CBD all sold under a CBD MD mark and available, at least, through a website having the domain name www.CBDMD.com. This activity was originally thought by the Defendant to be associated with an entity known as cbdMD LTD of Northern Ireland, BT34 3HQ 1 Elmfield Avenue Warrenpoint, Newry, Co.

23. Counsel for the Defendant sent a letter and an email to cbdMD LTD on September 25, 2018 advising them that the Defendant had developed a number of "oils and herbal preparations all sold under the federally registered CBD MD mark, as evidenced in U.S. Federal Trademark Registration Number 5,173,264" and that "if the current sales and marketing of a line of Medicinal oils and herbal preparations all sold under the CBD MD mark continues by CBDMD, LTD the consumers will assume that there is some sponsorship, endorsement or association between Majik and CBDMD, LTD that, at least currently, does not exist", but noted that the Defendant was open to "discussion of some business solutions to the mutual use of this mark in ways that do not interfere, and maybe mutually benefit, the use and growth of this product line for both parties" and invited their intellectual property counsel to begin such discussions.

24. General Counsel to each of the Parent Corporation, Plaintiff, and Cure Base Development, LLC contacted counsel for Defendant on October 1, 2018 and began what Defendant thought was good faith business discussions for resolving the issues between the parties.

25. Between October 1, 2018 and February 20, 2019, there were over twenty communications from General Counsel for Parent Corporation and Plaintiff to

Counsel for the Defendant purporting to address potential business relations between the relevant parties in this matter.

26. Defendant was not aware in October 2018 that the relevant infringing uses of the conflicting CBDMD marks were actually by Parent Corporation.

27. The goods sold under the trademark containing CBDMD, or similar terms thereto, sought to be registered by Cure Base Development, LLC, or the Plaintiff are sold by Parent Corporation, cbdMD, Inc., who controls the nature and quality of these goods.

### *CBDMD LLC FORMATION*

28. Plaintiff was formed on November 26, 2018 under the name CBDMD LLC by the Parent Corporation, then known as Level Brands Inc. At the time of this formation, the Parent Corporation knew of Defendant's registration for CBD MD.

29. Plaintiff is a wholly owned subsidiary of Parent Corporation.

30. On November 26, 2018, Parent Corporation was aware that the use of the name CBDMD LLC in commerce in connection with CBD products was likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of that entity with the Defendant, or as to the origin, sponsorship, or approval of such CBD products by Defendant.

### *CBDMD SYNERGY AND SYNERGY CBDMD MARKS*

31. Cure Based Development, LLC filed trademark applications for federal registrations for the mark CBDMD SYNERGY on December 20, 2018, now bearing trademark

application serial number 87/613,823, and for the mark SYNERGY CBDMD on December 20, 2018, now bearing trademark application serial number 87/613,850.

32. The goods sold under the trademarks SYNERGY CBDMD and CBDMD SYNERGY sought to be registered in trademark application serial numbers 87/613,823 and 87/613,850 are sold by the Parent Corporation.

33. Parent Corporation controls the nature and quality of goods sold under the trademarks SYNERGY CBDMD and CBDMD SYNERGY sought to be registered in trademark application serial numbers 87/613,823 and 87/613,850, and Parent Corporation would be the proper owner of any valid trademark rights in the marks sought to be registered in trademark application serial numbers 87/613,823 and 87/613,850.

34. Upon information and belief, the Parent Corporation caused the trademark application serial numbers 87/613,823 and 87/613,850 to be falsely and improperly filed in the name of Cure Based Development, LLC to create a false perception of parties, other than then Level Brands, Inc., using marks similar to the Defendant's CBD MD mark. This intentional deceit was intended to benefit the Parent Corporation's ongoing negotiations with Defendant.

35. Plaintiff merged with Cure Based Development, LLC on or around December 20, 2018.

### cbdMD, INC. NAME CHANGE

36. Parent Corporation, then known as Level Brands, Inc. changed its name to cbdMD, Inc. on or around May 1, 2019.

37. In May 2019, Parent Corporation was aware that the use of the name cbdMD, Inc. in commerce in connection with CBD products was likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of that entity with the Defendant, or as to the origin, sponsorship, or approval of such CBD products by Defendant.

38. The name change of the Parent Corporation was to facilitate the illicit usurpation of the Defendant's rights in its CBD MD mark by the Parent Corporation and/or Plaintiff.

### CBDMD MARKS OF '429 APPLICATION, '502 APPLICATION AND '504 APPLICATION

39. Plaintiff filed trademark applications for: (i) federal registration for the stylized mark containing the term CBDMD on May 29, 2019 now bearing trademark application serial number 88/451,429, (ii) federal registration for the mark cbdMD on May 29, 2019 now bearing trademark application serial number 88/451,502, and (iii) federal registration for the mark CBDMD on June 2, 2020 now bearing trademark application serial number 88/944,504.

40. Plaintiff asserted date(s) of first use in commerce (i) of the mark CBDMD on the goods in class 003 and 005 in trademark application serial number 88/944,504 as at least as early as December 20, 2018, (ii) of the mark cbdMD on the goods in class 003 and 005 in trademark application serial number 88/451,502 as at least as early as December 20, 2018, and (iii) of the mark CBDMD on the goods in class 003 and 005

27

in trademark application serial number 88/944,504 as at least as early as May 24, 2017.

41. Plaintiff asserted that (i) the mark CBDMD in trademark application serial number 88/451,429 is in use in commerce and was in use in commerce as of the filing date of this application on or in connection with the goods in the application, (ii) the mark cbdMD in trademark application serial number 88/451,502 is in use in commerce and was in use in commerce as of the filing date of this application on or in connection with the goods in the application, and (iii) the mark CBDMD in trademark application serial number 88/944,504 is in use in commerce and was in use in commerce as of the filing date of this application on or in connection with the goods in the application.

42. The goods sold under (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) under the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) under the trademark CBDMD sought to be registered in trademark application serial number 88/944,504, are actually sold by the Parent Corporation.

43. The Parent Corporation controls the nature and quality of goods sold under (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504. The Parent Corporation would be the proper owner of any valid trademark rights in the alleged

marks sought to be registered in trademark application serial numbers 88/451,429, 88/451,502, and 88/944,504.

44. The Parent Corporation caused the trademark application serial numbers 88/451,429, 88/451,502, and 88/944,504 to be falsely and improperly filed in the name of the Plaintiff to create a false perception of parties, other than the Parent Corporation, being involved with disputes with the Defendant's CBD MD mark, such as Petitioner in the Cancellation proceeding and the Plaintiff in this very litigation. This intentional deceit was intended to improperly benefit the Parent Corporation investor relations and SEC filings, which made no reference of the trademark dispute going to the very heart of the Parent Corporation's alleged main CBDMD brand, as well as to benefit the Parent Corporation in any negotiations with Defendant.

45. Plaintiff falsely asserted that it is the owner of (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504, and that no other persons, except, if applicable, concurrent users, have the right to use the these marks in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

46. Plaintiff has asserted (i) the trademark mark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the

trademark CBDMD sought to be registered in trademark application serial number 88/944,504, each is not a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient.

47. Plaintiff has asserted that (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504, each without regard to the alleged mark of the Defendant, is capable of distinguishing the goods of the applicant from the goods of others and can function as a trademark and an indicator of source.

48. The goods sold in class 003 and 005 under (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504, each contain CBD.

49. The goods containing CBD sold in class 003 and 005 under (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504, each substantially overlap with the goods identified in class 003 and 005 in the Defendant's Registration No. 5,173,264.

50. Regarding both the Controlled Substances Act (CSA) and the regulation by the United States Food and Drug Administration (FDA), there is no identifiable difference between the goods containing CBD identified in class 003 and 005 in the Defendant's Registration No. 5,173,264 and any of the goods containing CBD sold in class 003 and 005 under (i) the trademark CBDMD sought to be registered in trademark application serial number 88/451,429, (ii) the trademark cbdMD sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD sought to be registered in trademark application serial number 88/944,504.

51. The trademark CBDMD Plaintiff sought to be registered in trademark application serial number 88/451,429 (ii) the trademark cbdMD Plaintiff sought to be registered in trademark application serial number 88/451,502, and (iii) the trademark CBDMD Plaintiff sought to be registered in trademark application serial number 88/944,504 each creates the same commercial impression as the mark CBD MD in the Defendant's Registration No. 5,173,264.

52. The use of the mark (i) CBDMD Plaintiff sought to be registered in trademark application serial number 88/451,429, (ii) cbdMD Plaintiff sought to be registered in trademark application serial number 88/451,502, and (iii) CBDMD Plaintiff sought to be registered in trademark application serial number 88/944,504, on the CBD containing goods sold in class 003 and 005 was each without the consent of the Defendant and this use in connection with the sale, offering for sale, distribution, or advertising of such goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public as to the source of the goods and/or a sponsorship,

association or endorsement by or with the Defendant in association with Registration No. 5,173,264.

53. The Plaintiff has admitted in requests for admissions in the related TTAB cancellation proceeding that that (i) the goods containing CBD in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/451,429 sold since at least as early as December 20, 2018, (ii) the goods containing CBD in class 003 and 005 used with the mark cbdMD in trademark application serial number 88/451,502 sold since at least as early as December 20, 2018, and (iii) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/944,504 sold since at least as early as May 24, 2017, each has not, and does not, violate any known federal or state laws.

54. Neither the Plaintiff nor Parent Corporation has made any public statements that (i) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/451,429 sold since at least as early as December 20, 2018, (ii) the goods containing CBD in class 003 and 005 used with the mark cbdMD in trademark application serial number 88/451,502 sold since at least as early as December 20, 2018, or (iii) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/944,504 sold since at least as early as May 24, 2017, violate any known federal or state laws.

55. The Parent Corporation has made no SEC filing stating that (i) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/451,429 sold since at least as early as December 20, 2018, (ii) the goods

32

containing CBD in class 003 and 005 used with the mark cbdMD in trademark application serial number 88/451,502 sold since at least as early as December 20, 2018, and (iii) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/944,504 sold since at least as early as May 24, 2017, violate any known federal or state laws.

56. Neither the Plaintiff nor the Parent Corporation has received any warning letter or other correspondence from the FDA regarding (i) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/451,429, (ii) the goods containing CBD in class 003 and 005 used with the mark cbdMD in trademark application serial number 88/451,502, or (iii) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/944,504.

### *CBDMD PREMIUM CBD OIL MARK OF '556 APPLICATION AND CBDMD PREMIUM MARK OF '595 APPLICATION*

57.  Plaintiff filed trademark applications for federal registrations for the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM on May 29, 2019 now bearing trademark application serial numbers 88/451,556 and 88/451,595, respectively.

58. Plaintiff asserted a date of first use in commerce of the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM on the goods in class 005 in trademark application serial numbers 88/451,556 and 88/451,595 as at least as early as December 20, 2018.

59. Plaintiff asserted that the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM in trademark application serial numbers 88/451,556 and 88/451,595 are

in use in commerce and were in use in commerce as of the filing date of these applications on or in connection with the goods in the application.

60. The goods sold under the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 are actually sold by the Parent Corporation

61. The Parent Corporation controls the nature and quality of goods sold under the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 and the Parent Corporation would be the proper owner of any valid trademark rights in the mark sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595.

62. Upon information and belief, the Parent Corporation caused the trademark application serial numbers 88/451,556 and 88/451,595 to be falsely and improperly filed in the name of the Plaintiff to create a false perception of parties, other than the Parent Corporation, being involved with disputes with the Defendant's CBD MD mark, such as Petitioner in the Cancellation proceeding and the Plaintiff in this very litigation. This intentional deceit was intended to improperly benefit the Parent Corporation's investor relations and SEC filings, which made no reference of the trademark dispute going to the very heart of their main CBDMD brand, as well as to benefit the Parent Corporation in any negotiations with Defendant.

63. Plaintiff falsely asserted it is the owner of the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial

numbers 88/451,556 and 88/451,595 and that no other persons, except, if applicable, concurrent users, have the right to use the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

64. Plaintiff has asserted the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 are not a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient.

65. Plaintiff has asserted that the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595, without regard to the alleged mark of the Defendant, is capable of distinguishing the goods of the applicant from the goods of others and can function as a trademark and an indicator of source.

66. The goods sold in class 005 under the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 contain CBD.

67. The goods containing CBD sold in class 005 under the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 substantially overlap with the goods identified in class 005 in the Defendant's Registration No. 5,173,264.

68. Regarding both the Controlled Substances Act (CSA) and the regulation by the United States Food and Drug Administration (FDA), there is no identifiable difference between the goods containing CBD sold in class 005 under the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 and the goods identified in class 005 in the Defendant's Registration No. 5,173,264.

69. The marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 creates the same commercial impression as the mark CBD MD in the Defendant's Registration No. 5,173,264.

70. The use of the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 for the CBD containing goods sold in class 005 was without the consent of the Defendant and this use in connection with the sale, offering for sale, distribution, or advertising of such goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public as to the source of the goods and/or a sponsorship, association or endorsement by or with the Defendant in association with Registration No. 5,173,264.

71. The goods containing CBD in class 005 used with the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 sold since at least as early as December 20, 2018, have not and do not violate any known federal or state laws.

72. Neither the Plaintiff nor the Parent Corporation has made any public statements that the goods in class 005 used with the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 sold since at least as early as December 20, 2020, violate any known federal or state laws.

73. The Parent Corporation has made no SEC filing stating that the goods in class 005 used with the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 sold since at least as early as December 20, 2018, violate any known federal or state laws.

74. Neither the Plaintiff nor the Parent Corporation has received any warning letter or other correspondence from the FDA regarding the goods in class 005 used with the marks CBDMD PREMIUM CBD OIL and CBDMD PREMIUM sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595.

## *UNSUBSTANTIATED CLAIMS OF PRODUCTS OF CBDMD, INC.*

75. Upon information and belief, the Parent Corporation has publically made claims that its CBD Products could (i) boost brain power, (ii) slow aging, (iii) battle cancer, (iv) improve digestive function, (v) combat allergies, (vi) ease the side effects of menopause, and (vii) minimize hangover symptoms. Upon information and belief, these claims have been made in at least publicly available blog posts and/or product descriptions.  There is, as of the filing date of these amended counterclaims, no credible medical or scientific substantiation for any of these claims.

## *BAD FAITH CANCELLATION PROCEEDING*

76. The Plaintiff, at the direction of its managing member the Parent Corporation and Martin A Sumichrast, filed Cancellation Proceeding 92071109 in bad faith solely to drive up the legal fees of the Defendant. Martin A. Sumichrast, chairman of the Board of Directors and Co-CEO of cbdMD, Inc., made this strategy clear when he sent a text message to a member of Defendant stating "I hope your shareholders like to write checks to lawyers." The Plaintiff repeatedly demonstrated its illegitimate disinterest in prosecuting the Cancellation Proceeding and filed this case only once full participation in the Cancellation Proceeding would have been forced upon them.

77. The initial pleadings of the Plaintiff in the Cancellation Proceeding were so deficient that the TTAB noted in an Order dated December 30, 2019 (paper #13 – Granting Defendant's motion to dismiss on 7 of 9 grounds and denying the motion on two remaining grounds) that the "abundance of deficiencies in the pleadings appears to demonstrate a lack of reasonable inquiry into the subject matter."

78. The Plaintiff filed a Corrected Amended Complaint in the Cancellation Proceeding, which in paragraphs 61-63 again baselessly asserted that that the "phrase CBD MD is a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient" (emphasis added).

79. The Plaintiff concluded in the Corrected Amended Complaint in the Cancellation Proceeding that the "CBD MD mark is incapable of distinguishing the goods of [Defendant] from the goods of others and therefore cannot function as a trademark and an indicator of source." The Plaintiff had, and still has, no basis to support this

assertion, which was raised in bad faith solely to harass the Defendant and increase its costs in defending this baseless claim.

80. Defendant sought to engage in a Cancellation Proceeding discovery conference, in which, in accordance with Fed. R. Civ. P. 26(f)(2), "the parties must consider the nature and basis of their claims." The Plaintiff further evidenced its bad faith filing of this Cancellation Proceeding and its complete disinterest in prosecuting the merits of this action when for several months, through November 16, 2020, it failed to cooperate with the Defendant to even schedule the required Discovery Conference.

81. Pursuant to 37 C.F.R. § 2.120(h)(1), the Defendant filed a Motion for Sanctions on November 16, 2020 against Plaintiff in the Cancellation Proceeding for its failure to participate in the required Discovery Conference. This was again evidence of the Plaintiff's goal of driving up the Defendant's costs through a failure to prosecute the Cancellation Proceeding which it initiated but never intended to prosecute.

82. The Plaintiff's counsel contacted Defendant's counsel only after the filing of the Motion for Sanctions. Plaintiffs' counsel then hastily participated in an extremely brief Discovery Conference. In the Discovery Conference, when discussing the cancellation grounds that the "CBD MD mark is incapable of distinguishing the goods of [Defendant] from the goods of others and therefore cannot function as a trademark and an indicator of source" because "phrase CBD MD is a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient," the Plaintiff's counsel provided no details or hint of supporting material.

83. The Order in the Cancellation Proceeding dated January 8, 2021 (Paper 30) set a deadline for the Parties' Initial Disclosures of January 11, 2021. On Monday January 11, 2021, the Defendant sent its initial disclosures to the Plaintiff. On this court set deadline, the Plaintiff again evidenced its bad faith filing of the Cancellation Proceeding and its complete disinterest in prosecuting the merits of this Cancellation Proceeding when it made no disclosures to the Defendant and did not contact the undersigned on or prior to this deadline regarding this submission.

84. On Wednesday January 22, 2021, the Defendant served the Defendant's First Discovery Requests upon Plaintiff, which included requesting the identification and submission (or making the materials available for inspection) of the materials that could form the Plaintiff's initial disclosures. The Plaintiff was required to file a response to these discovery requests on or before February 22, 2021. The Plaintiff again evidenced its bad faith filing of this cancellation proceeding and its complete disinterest in prosecuting the merits of this action when it made no disclosures to the Defendant and did not contact the undersigned on or prior to this deadline regarding this submission. Now several months later the Plaintiff still has filed no response to the long overdue Discovery Requests.

85. The Defendant timely filed, on January 25, 2021, a motion to compel the omitted Initial Disclosures within 30 days of the Plaintiff's failure to file their Initial Disclosures (due on January 11, 2021) (Paper 31). In the TTAB's order of February 1, 2021, the TTAB reiterated that the "deadline for service of initial disclosures was January 11, 2021" adding that the Plaintiff must submit such disclosures "by February 8, 2021 in an absence of consent for an extension or suspension from

Respondent.  The Board hesitates to <u>remind [Plaintiff] that it brought this cancellation</u> <u>proceeding in the first instance and that it was filed on April 16, 2019, over 21</u> <u>months ago.  [Plaintiff] carries the burden of moving forward in a timely manner on</u> <u>the proceeding schedule</u>." (Emphasis added.)

86. The Plaintiff submitted what purported to be the Petitioner's Initial Disclosure on Friday, February 5, 2021.  As set forth in TBMP 401.02, "the Board encourages parties to actually exchange copies of disclosed documents rather than to merely identify their location."  Contrary to this suggestion, the Plaintiff here further evidenced its bad faith prosecution of this case with its clear intention of not supplying any of the alleged documents listed in the purported Plaintiff's Initial Disclosures.

87. The Plaintiff disingenuously suggested in the Initial Disclosure that "Petitioner will produce such information as required subject to an appropriate protective order entered by the Board," however, as the Plaintiff was aware, a protective order was already automatically entered in the proceeding.  Further, there was no effort made by the Plaintiff to propose a protective order or a modification of the existing one.

88. In response to the Plaintiff's Initial Disclosures, Defendant's counsel sent email correspondence to the Plaintiff's counsel on Saturday, February 6, 2021 that inquired "When and where can we review the documents identified in your initial disclosure? Can we set up some timing for this review – I believe this is imperative to move forward with quickly." In response to the inquiry of February 6, 2021, the Plaintiff did not propose a signed protective order, or modifications to the existing protective

order, nor did it allow for a review of the purported documents, discuss the format of depositions, or discuss the timing of this case.

89. The record establishes that the Plaintiff, under the direction of the Parent Corporation and Martin Sumichrast, had no intention of complying with basic rules in the TTAB and had no intention of prosecuting this Cancellation Proceeding in any substantive manner. This entire Cancellation Proceeding was entered in bad faith for the nefarious purpose outlined by Mr. Sumichrast of having Defendant "write checks to lawyers."

90. The Plaintiff, on February 12, 2021, filed with the TTAB Petitioner's Motion to Stay Proceeding Pending Outcome of Civil Action (paper No. 33) as a way to whitewash and dismiss their bad faith filing of this Cancellation Proceeding and their complete failure to comply with the rules of the TTAB or prosecute the merits of that action.

## *COUNTERCLAIM COUNT I*

### *TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114*

91. Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

92. Defendant hereby asserts a claim for Trademark Infringement under 15 U.S.C. §1114 against Parent Corporation, cbdMD, Inc., and Plaintiff, CBD Industries, LLC.

93. The Defendant's Mark CBD MD is not a commonly used descriptive phrase that connotes information on products which include CBD as an ingredient and the mark CBD MD is capable of distinguishing, and does distinguish, the goods of the

Defendant from the goods of others and can and does function as a trademark and an indicator of source.

94. The Defendant owns and commercially uses the distinctive mark CBD MD on goods sold in interstate commerce including Skin and body topical lotions, creams and oils for cosmetic use, all of the aforementioned containing CBD; and Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; and Herbs for medicinal purposes. The mark CBD MD is a distinctive, valuable and valid enforceable mark of the Defendant.

95. The Defendant owns and maintains valid federal trademark Registration No 5,173,264, which was properly issued to Defendant on March 28, 2017 for the mark CBD MD.

96. The Defendants use of its mark CBD MD on goods sold in interstate commerce including Skin and body topical lotions, creams and oils for cosmetic use, all of the aforementioned containing CBD; and Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; and Herbs for medicinal purposes, predates the sale of goods sold by cbdMD, Inc. and/or Plaintiff in interstate commerce containing CBD under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM.

97. The goods sold by cbdMD, Inc. and/or Plaintiff in interstate commerce containing CBD under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM substantially overlap with the goods sold under the CBD MD mark of the Defendant's Registration No. 5,173,264.

98. The goods sold by cbdMD, Inc. and/or Plaintiff in interstate commerce containing CBD under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM are directly competing with the goods sold under the CBD MD mark of the Defendant's Registration No. 5,173,264.

99. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in interstate commerce contain the dominant term CBDMD which exhibits substantially the same sound and visual depiction as the Defendant's mark CBD MD.

100. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in interstate commerce are similar in both connotation and commercial impression as the Defendant's mark CBD MD.

101. Plaintiff has asserted that the trade channels of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in interstate commerce are "nearly identical" as for the Defendants' goods sold under the Defendant's mark CBD MD.

102. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by

cbdMD, Inc. and/or Plaintiff in interstate commerce create the same commercial impression as the mark CBD MD in the Defendant's Registration No. 5,173,264.

103. The use by cbdMD, Inc. and/or Plaintiff of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM in interstate commerce was and is without the consent of the Defendant and this use in connection with the sale, offering for sale, distribution, or advertising of the described goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public, including consumers, as to the source of the goods and/or imply a sponsorship, association or endorsement by or with the Defendant in association with the mark CBD MD and Registration No. 5,173,264.

104. The trademark infringement by cbdMD, Inc. and/or Plaintiff was willful and malicious and caused economic damage to the Defendant including lost sales, damaged reputation, and unjust enrichment to cbdMD, Inc. and Plaintiff. The measure of these damages will include: (1) Disgorgement of cbdMD, Inc. and Plaintiff's profits; (2) Lost profits suffered by the Defendant; (3) Reasonable royalties; and/or, (4) Corrective advertising. Defendant further is entitled to Parent Corporation and Plaintiff's profits trebled, as well as its attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

105. By reason of, at least, Parent Corporation and Plaintiff's deliberate, willful, and intentional disregard of Defendant's rights, this case is "exceptional" within the meaning of 15 U.S.C. § 1117, and Defendant is entitled to its attorneys' fees and costs.

106.    The Defendant asserts this claim for Trademark Infringement under 15 U.S.C. §1114 against the Plaintiff CBD Industries, LLC because the Plaintiff CBD Industries, LLC asserts, contrary to the evidence, that they are the actual owner of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM, which, if established, would make both Plaintiff CBD Industries, LLC and the actual user of the marks, cbdMD, Inc., both liable as infringers.

107.    Further, by reason of Parent Corporation and Plaintiff's wrongful acts, Defendant has suffered and will continue to suffer irreparable harm and damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that the goods and services of Parent Corporation and/or Plaintiff are affiliated with, sponsored by, approved by, or originate from Defendant.

108.    By reason of Parent Corporation and Plaintiff's wrongful acts, Defendant has suffered and will continue to suffer irreparable injury that cannot be adequately compensated for by damages alone, and Defendant has no adequate remedy at law for Parent Corporation and Plaintiff's infringement of its rights.  Defendant is entitled to preliminary and permanent injunctive relief.

## *COUNTERCLAIM COUNT II*

### *COMMON LAW TRADEMARK INFRINGEMENT*

109.    Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

110. Defendant hereby asserts a claim for Common Law Trademark Infringement against Parent Corporation, cbdMD, Inc., and Plaintiff, CBD Industries, LLC.

111. The Defendant owns and commercially uses the mark CBD MD on goods and services sold in North Carolina including Skin and body topical lotions, creams and oils for cosmetic use, all of the aforementioned containing CBD; and Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; Herbs for medicinal purposes; and educational services regarding CBD to medical professionals. The mark CBD MD is a valuable valid enforceable common law mark of the Defendant.

112. The Defendant's use of its mark CBD MD on goods sold in North Carolina including Skin and body topical lotions, creams and oils for cosmetic use, all of the aforementioned containing CBD; and Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; and Herbs for medicinal purposes, predates the sale of goods sold by cbdMD, Inc. and/or Plaintiff in North Carolina containing CBD under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM.

113. The goods sold by cbdMD, Inc. and/or Plaintiff in North Carolina containing CBD under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM are directly competing with the goods sold under the CBD MD mark of the Defendant's Registration No. 5,173,264 in North Carolina.

114. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by

47

cbdMD, Inc. and/or Plaintiff in North Carolina contain the dominant term CBDMD which exhibits substantially the same sound and visual depiction as the Defendant's mark CBD MD used in North Carolina.

115. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in North Carolina are similar in both connotation and commercial impression as the Defendant's mark CBD MD used in North Carolina.

116. The Plaintiff has asserted that the trade channels of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in North Carolina are "nearly identical" as for the Defendant's goods sold under the Defendant's mark CBD MD in North Carolina.

117. The goods sold by cbdMD, Inc. and/or Plaintiff in North Carolina containing CBD sold under the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM substantially overlap with the goods and services sold under the common law CBD MD mark of the Defendant in North Carolina.

118. The alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in North Carolina create the same commercial impression as the mark CBD MD used by the Defendant in North Carolina.

119.    The use by cbdMD, Inc. and/or Plaintiff of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM in North Carolina was and is without the consent of the Defendant and this use in connection with the sale, offering for sale, distribution, or advertising of the described goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public, including consumers, as to the source of the goods and/or imply a sponsorship, association or endorsement by or with the Defendant in association with the mark CBD MD.

120.    The trademark infringement by cbdMD, Inc. and/or Plaintiff was willful and malicious and caused economic damage to the Defendant including at least lost sales and damaged reputation in an amount to be determined at trial, as well as unjust enrichment to cbdMD, Inc. and Plaintiff.

121.    Further, by reason of Parent Corporation and Plaintiff's wrongful acts, Defendant has suffered and will continue to suffer irreparable harm and damage to its business, trade, reputation, and goodwill if Parent Corporation and Plaintiff are not restrained by this Court from violation of Defendant's rights.

122.    Defendant's remedy at law is not by itself adequate, and Defendant has suffered and continues to suffer irreparable harm such that Defendant is entitled to preliminary and permanent injunctive relief.

### *COUNTERCLAIM COUNT III*

### *FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTIONS UNDER 15 U.S.C. §1125*

123. Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

124. The Defendant hereby asserts a claim for false designation of origin and false descriptions under 15 U.S.C. §1125 against cbdMD, Inc (the Parent Corporation) and the Plaintiff, CBD Industries, LLC.

**Mark Based violations of 15 U.S.C. §1125**

125. The above-described use by cbdMD, Inc. and/or Plaintiff of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM in interstate commerce was without the consent of the Defendant and this use in connection with the sale, offering for sale, distribution, or advertising of the identified goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public, including consumers, as to the source of the goods and/or imply a sponsorship, association or endorsement by or with the Defendant in association with its valid enforceable mark CBD MD.

126. The Plaintiff CBD Industries, LLC asserts, contrary to the evidence, that they are the actual owner of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM, which, if established, would make both Plaintiff and the actual user of the alleged marks, cbdMD, Inc., both liable under this count as outlined above.

**Identity and Domain Name Based violations of 15 U.S.C. §1125**

127. The corporate identity CBDMD, LLC was used by the Plaintiff in connection with the CBD goods sold by cbdMD, Inc. and was likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection, or association of CBDMD, LLC with Defendant as to the origin, sponsorship, or approval of these goods or commercial activities by Defendant.

128. The corporate identity cbdMD, Inc. used by the Parent Corporation in connection with the CBD goods sold by cbdMD, Inc. is likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection, or association of cbdMD, Inc with Defendant as to the origin, sponsorship, or approval of these goods or commercial activities by Majik.

129. The domain name www.cbdmd.com used by the Parent Corporation and/or Plaintiff in connection with the CBD goods sold by cbdMD, Inc. and/or Plaintiff is likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection, or association of cbdMD, Inc with Defendant as to the origin, sponsorship, or approval of these goods or commercial activities by Majik.

**False Advertising Based violations of 15 U.S.C. §1125**

130. cbdMD, Inc. has publically made claims that its CBD Products could (i) boost brain power, (ii) slow aging, (iii) battle cancer, (iv) improve digestive function, (v) combat allergies, (vi) ease the side effects of menopause, and (vii) minimize hangover symptoms. These claims have been made in at least publicly available blog posts and/or product descriptions.  There is, as of yet, no credible medical or scientific

substantiation any of these claims which are misleading to the relevant public consumers.

131.    cbdMD, Inc.'s unsubstantiated claims regarding its CBD Products were made in interstate commerce and are misleading statements suggesting there is evidence and support for these unsubstantiated claims and is likely to deceive the relevant public as to the proven therapeutic benefits of these products.

132.    cbdMD, Inc.'s unsubstantiated claims regarding its CBD Products are material misrepresentations as these deceptive statements are likely to influence purchasers to purchase the products based upon unproven therapeutic benefits of these products.

133.    Defendant has been and continues to be unfairly economically damaged by the use of these unsubstantiated claims, as well as by Parent Corporation's and Plaintiff's false designation of origin, which are in violation of 15 U.S.C. §1125.

134.    Defendant is entitled to Parent Corporation and Plaintiff's profits trebled, as well as its attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

135.    By reason of, at least, Parent Corporation and Plaintiff's deliberate, willful, and intentional disregard of Defendant's rights, this case is "exceptional" within the meaning of 15 U.S.C. § 1117, and Defendant is entitled to its attorneys' fees and costs.

136.    Further, by reason of Parent Corporation and Plaintiff's wrongful acts, Defendant has suffered and will continue to suffer irreparable harm and damage to its business, trade, reputation, and goodwill if Parent Corporation and Plaintiff are not restrained by this Court from violation of Defendant's rights.

137.    Defendant's remedy at law is not by itself adequate, and Defendant has suffered and continues to suffer irreparable harm such that Defendant is entitled to preliminary and permanent injunctive relief.

### *COUNTERCLAIM COUNT IV*

### *CYBER-PIRACY UNDER 15 U.S.C. §1125*

138.    Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

139.    The Defendant hereby asserts a claim for cyber-piracy under 15 U.S.C. §1125 against cbdMD, Inc. (the Parent Corporation).

140.    The Parent Corporation has registered or caused to be registered the domain name www.cbdmd.com and uses the same for the sale of infringing goods as noted above. The Parent Corporation has obtained and/or maintained this domain name in bad faith against the Defendant in an attempt to cause confusion as to the source of goods and services under the CBD MD brand of the Defendant.

141.    The domain name www.cbdmd.com used by the Parent Corporation in connection with the CBD goods sold by cbdMD, Inc. is likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection, or association of cbdMD, Inc. with Defendant as to the origin, sponsorship, or approval of these goods or commercial activities by Majik.

142.    The Parent Corporation's registration and continued use of the domain www.cbdmd.com is in bad faith with the intent to profit from the Defendant's CBD

MD mark. The domain is identical or confusingly similar to the Defendant's CBD MD mark and this use is a violation of the cyber-piracy prevention provisions of 15 U.S.C. §1125.

143. Defendant has been damaged in an amount to be determined at trial by Parent Corporation's registration and continued use of this domain.

144. Alternately, Defendant is entitled to statutory damages pursuant to 15 U.S.C. § 1117(d).

145. Further, by reason of Parent Corporation's wrongful acts, Defendant has suffered and will continue to suffer irreparable harm and damage to its business, trade, reputation, and goodwill if Parent Corporation is not restrained by this Court from violation of Defendant's rights.

146. Defendant's remedy at law is not by itself adequate, and Defendant has suffered and continues to suffer irreparable harm such that Defendant is entitled to preliminary and permanent injunctive relief.

### *COUNTERCLAIM COUNT V*

### *VIOLATIONS OF N.C. GEN. STAT. §75-1.1, et seq.*

147. Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

148. The Defendant hereby asserts a claim for violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, *et seq.*, against cbdMD, Inc. (the Parent Corporation) and the Plaintiff, CBD Industries, LLC.

54

149.  At all relevant times, Parent Corporation and Plaintiff have been and are engaged in commerce in North Carolina as defined by Chapter 75 of the North Carolina General Statutes.

150.  The acts defining the trademark infringement of the Defendant's mark by the Parent Corporation and, alternatively, the Plaintiff CBD Industries, LLC outlined above constitute unfair methods of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

151.  The acts by Parent Corporation and Plaintiff against Defendant constituting the mark-based violations of 15 U.S.C. §1125 outlined above constitute unfair methods of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

152.  The acts by Parent Corporation and Plaintiff against Defendant constituting the identity-based violations of 15 U.S.C. §1125 outlined above constitute unfair methods of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

153.  The acts by Parent Corporation and Plaintiff against Defendant constituting false advertising-based violations of 15 U.S.C. §1125 outlined above constitute unfair methods of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

154.  The acts by Parent Corporation and Plaintiff against Defendant constituting Cyber-piracy violations of 15 U.S.C. §1125 outlined above constitute unfair methods

of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

155. Plaintiff's bad faith filing and failure to prosecute the TTAB Cancellation Proceeding against the Defendant outlined above constitute unfair methods of competition and/or unfair and deceptive acts or practices, in or affecting commerce, in violation of N.C. Gen. Stat. §75-1.1, *et seq*.

156. The wrongful conduct of Parent Corporation and Plaintiff in commerce in at least North Carolina, as alleged above, affects Defendant's actual and potential customers and sales in the State of North Carolina and constitutes unfair and deceptive acts and practices and/or unfair methods of competition, which have resulted and will continue to result in damages to Defendant.

157. As a direct and proximate result of this wrongful conduct, Defendant has been damaged and is entitled to a judgment against Parent Corporation and Plaintiff for actual damages, and those damages should be trebled pursuant to N.C. Gen. Stat. § 75-16.

158. Defendant also is entitled to an award of attorneys' fees pursuant to N.C. Gen. Stat. § 76-16.1.

## *COUNTERCLAIM COUNT VI*

### *COMMON LAW UNFAIR COMPETITION*

159. Defendant incorporates by reference all preceding paragraphs of the Counterclaims as if set forth fully herein.

160.    The Defendant hereby asserts a claim for common law unfair competition against cbdMD, Inc. (the Parent Corporation) and the Plaintiff, CBD Industries, LLC, for the anticompetitive acts set forth herein, including but not limited to those set forth in Counterclaim Count V.

161.    Parent Corporation and Plaintiff's use of Defendant's mark in connection with its goods and services is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact.

162.    Parent Corporation and Plaintiff's use of substantially similar infringing marks in relation to identical and/or substantially similar CBD products is causing and is likely to cause consumer confusion and infringes Defendant's common law rights in the CBD MD mark.

163.    Parent Corporation and Plaintiff's conduct constitutes unfair competition under the common law of State of North Carolina.

164.    Parent Corporation and Plaintiff's wrongful acts have caused and will continue to cause damage to Defendant in an amount to be proven at trial.

165.    Further, by reason of Parent Corporation and Plaintiff's wrongful acts, Defendant has suffered and will continue to suffer irreparable harm and damage to its business, trade, reputation, and goodwill if Parent Corporation and Plaintiff are not restrained by this Court from violation of Defendant's rights.

166.    Defendant's remedy at law is not by itself adequate, and Defendant has suffered

and continues to suffer irreparable harm such that Defendant is entitled to preliminary

and permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Majik

Medicine, LLC prays that this Court enter judgment in its favor as follows:

1.  A preliminary and permanent injunction enjoining and restraining cbdMD, Inc.,
    CBD Industries LLC, and their associates, agents, servants, employees, officers,
    directors, representatives, successors, assigns, attorneys, and all persons in
    active concert or participation with them who learn of the injunction through
    personal service or otherwise, from directly or indirectly or in any manner
    whatsoever, using or infringing the CBD MD mark including, but not limited to,
    through the use of the alleged marks CBDMD, cbdMD, CBDMD SYNERGY,
    SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD
    PREMIUM, or any other mark confusingly similar thereto;

2.  A preliminary and permanent injunction enjoining and restraining cbdMD, Inc.
    from using the domain www.cbdmd.com or the name/moniker cbdMD, Inc. in
    any CBD related commerce;

3.  A judgment dismissing all claims of the Plaintiff with prejudice;

4.  A judgment against Parent Corporation cbdMD, Inc. and Plaintiff CBD
    Industries LLC, on the counts set forth in Defendants' Counterclaims herein;

5. That Defendant be awarded all of its actual and/or statutory damages in an amount to be determined at trial in excess of $75,000 (exclusive of interest and costs and pre- and post-judgment interest) including but not limited to, monetary damages for (1) disgorgement of cbdMD, Inc. and Plaintiff's profits attributable to the infringing marks, (2) lost profits suffered by the Defendant, (3) reasonable royalties, (4) corrective advertising, (5) costs of this action, (6) costs and attorneys' fees incurred by the Defendant in the Cancellation Proceeding, and (7) such other sums as the Court shall find just;

6. A determination that this case is exceptional and/or that Parent Corporation and Plaintiff willfully, deliberately, and intentionally infringed Defendant's CBD MD mark, entitling Defendant to, among other things, reasonable attorneys' fees under 15 U.S.C. §1117;

7. That Defendant be awarded enhanced damages of three times its actual damages and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or N.C. Gen. Stat. § 75-16, or other applicable federal or state statute;

8. That Defendant be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or N.C. Gen. Stat. § 75-16.1, or other applicable federal or state statute;

9. That Defendant be awarded punitive damages in accordance with N.C. Gen. Stat., Chapter 1D;

10. That Defendant be awarded pre- and post-judgment interest;

11. A determination that the costs of this action be taxed against cbdMD, Inc. and CBD Industries LLC.; and

12. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Majik Medicine, LLC requests a jury trial on all issues so triable.

Respectfully submitted, this 9th day of September, 2021.

/s/ Blynn L. Shideler
Blynn L. Shideler
PA Registration No. 35,034
Blynn@blklawgroup.com
(Admitted *Pro Hac Vice*)
3500 Brooktree Road, Suite 200
Wexford PA 15090
Telephone: (724) 934-5450
Facsimile:  (724) 934-5461

and

/s/ J. Christopher Jackson
J. Christopher Jackson
N.C. State Bar No. 26916
cjackson@morningstarlawgroup.com
John T. Kivus
N.C. State Bar No. 42977
jkivus@morningstarlawgroup.com
**MORNINGSTAR LAW GROUP**
421 Fayetteville Street, Suite 530
Raleigh, NC 27601
Telephone:  (919) 590-0365
Facsimile:  (919) 882-8890

*Attorneys for Majik Medicine, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all counsel of record in this matter.

<div style="margin-left:40%">

*/s/ J. Christopher Jackson*
J. Christopher Jackson
N.C. State Bar No. 26916

*Counsel for Majik Medicine, LLC*

</div>