**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Case No. 3:21-CV-069-RJC-DCK**

**CBD INDUSTRIES, LLC,**

        **Plaintiff and
        Counterclaim Defendant,**

**v.**

**MAJIK MEDICINE, LLC,**

        **Defendant and
        Counterclaim Plaintiff,**

**v.**

**cbdMD, Inc.,**

        **Counterclaim Defendant.**

**DEFENDANT AND COUNTERCLAIM PLAINTIFF'S BRIEF IN OPPOSITION TO
MOTION TO DISMISS AMENDED COUNTERCLAIMS**

Majik Medicine, LLC ("Majik" or "Defendant"), by and through its undersigned counsel,

submits this Brief in Opposition to the Motion to Dismiss the Amended Counterclaims (ECF No.

36) filed by Counterclaim Defendants CBD Industries, LLC and cbdMD, Inc. (collectively,

"CBDI").

## FACTUAL BACKGROUND

This action is the attempt of a multimillion-dollar corporation (Counterclaim Defendant

cbdMD, Inc., the "Parent Corporation") to usurp the legitimate trademark rights of a smaller

competitor, Defendant and Counterclaim Plaintiff Majik, with prior trademark rights.

CBD Industries, LLC ("Plaintiff"), at the direction of its managing member the Parent Corporation and Martin A Sumichrast, filed Cancellation Proceeding 92071109 in bad faith solely to drive up the legal fees of Majik. Plaintiff repeatedly demonstrated its disinterest in prosecuting the Cancellation Proceeding, and filed this case on February 12, 2021, only once full participation in the Cancellation Proceeding would have been forced upon them. Plaintiff's Complaint alleges claims for trademark cancellation, false advertising and unfair competition under the Lanham Act, and state law and trade disparagement (ECF No. 1, Complaint ¶ 4).

Plaintiff sought and was granted suspension of the Cancellation Proceeding because of the trademark cancellation claims in this case, attempting to whitewash its improper actions in the Cancelation Proceeding.

Defendant Majik filed its First Amended Answer, Defenses, Counterclaims and Third Party Complaint on September 9, 2021 (ECF No. 31), in which Majik denies each of the claims against it, sets forth appropriate defenses, and raises six counterclaims against CBDI, discussed in detail herein.

On September 30, 2021, CBD Industries, LLC and cbdMD, Inc. filed their Motion to Dismiss (ECF No. 36) under Rule 12(b)(6) of the Federal Rules of Civil Procedure together with a supporting brief (ECF No. 37). Majik requests denial of this motion in its entirety for the reasons detailed below.

## APPLICABLE LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Oates v. Trustees of Gaston Coll.*, 2013 WL 3466955, at *2 (W.D.N.C. July 10, 2013) *quoting Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd.*

*Partnership,* 213 F.3d 175, 180 (4th Cir.2000). Instead, when evaluating a motion to dismiss, the court should take the non-moving party's allegations as true and view those allegations in the light most favorable to the non-moving party. *Mylan Labs, Inc. v. Matkar,* 7 F.3d 1130, 1134 (4th Cir.1993). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Robinson v. American Honda Motor Co., Inc.,* 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. in 1949. As noted by the U.S. Supreme Court *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). As discussed below, Majik has stated a plausible claim for relief in each of its six amended counterclaims.

## **ARGUMENT**

### I. **Majik has stated a claim for trademark infringement in Counterclaim One.**

Majik has properly asserted a claim for trademark infringement in Counterclaim Count I against both Parent Corporation, cbdMD, Inc., and Plaintiff, CBD Industries, LLC. As this court noted in *Mobile Tech Inc. v. InVue Sec. Products Inc.*, "[t]o establish a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114(1), a plaintiff must show both (1) "that it owns a valid and protectable mark," and (2) "that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of

confusion." 2019 WL 3001285, at *2 (W.D.N.C. June 21, 2019), *report and recommendation adopted,* 2019 WL 2992053 (W.D.N.C. July 9, 2019) (quoting *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)).

Regarding federal trademark infringement under § 1125(a), the Fourth Circuit has stated that:

> [a] plaintiff alleging a claim for federal trademark infringement under § 1125(a) must prove the following elements: (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred in commerce; (4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (internal quotations and citations omitted).

Of note, courts have applied essentially the same likelihood of confusion standard to claims for common law trademark infringement or unfair competition (regarding trademarks) under North Carolina law. *See Georgia Pac. Consumer Prods. v. Von Drehle Corp.*, 618 F.3d 441, 449 (4th Cir. 2010) ("[T]he parties do not dispute that, under the facts of this case ... the tests for trademark infringement and unfair competition under the Lanham Act are essentially the same as that for common law unfair competition under North Carolina common law; all focus on the likelihood of confusion as to the source of the goods involved."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) ("The North Carolina common law of unfair competition in the context of trademarks and tradenames is similar to the federal law of trademark infringement."); *Passport Health, LLC v. Avance Health System, Inc.,* 2018 WL 6620914, at *6 (E.D.N.C. Dec. 18, 2018) (citations omitted) ("The tests for North Carolina common law unfair competition and unfair and deceptive trade practices in the context of trademark are similar to that for trademark infringement"); *Superior Performers, Inc. v. Family*

*First Life, LLC*, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (citing *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 422 (4th Cir. 1998) ("'Likelihood of confusion' is the basic test of both common law trademark infringement and federal statutory trademark infringement.")).

CBDI states in its motion that Majik does not "possess a valid trademark registration because the registration was based on the sale of products that were unlawful under the Food, Drug and Cosmetic Act and the Controlled Substances Act" (ECF No. 37, CBDI Brief at 7). This is incorrect.

The Amended Counterclaims incorporated by reference the responses, statements, and allegations of Majik's Answer and Defenses (ECF No. 31, Majik Counterclaims ¶ 1), in which Majik asserted that the "Defendant further denies any implication that Defendant's CBD products sold under its CBD MD mark were, or are, unlawful under relevant federal or state laws in a manner that would negate the federal trademark registration," (ECF No. 31, Majik Answer ¶¶ 26, 42) and that the "USPTO has issued guidelines for applications that identify goods encompassing CBD and has guidelines to facilitate registration of such marks." (ECF No. 31, Majik Answer ¶¶ 36, 38). Thus, the Counterclaims assert that the CBD products sold at the relevant times in this matter, such as by Majik, were not unlawful under relevant federal or state laws.

Further, the argument that Majik's products violated federal law, and thus there is no use or intent to use the mark in commerce, fails based upon the Plaintiff's own pleadings and the federal law at the time of Majik's registration, as well as current federal law. First, CBD Industries, LLC's own assertions do not support the alleged federal illegality of sales. Majik's responses thereto are incorporated into its Counterclaims by reference (ECF No. 31, Majik Counterclaims ¶ 1). Plaintiff states in paragraph 10 of its Complaint (ECF No. 1) that it began selling the CBDMD

brand of products "at least as early as May 16, 2017," and asserts, in paragraph 12 of the Complaint, that it has a common law trademark for CBDMD, which must be based upon legal use in commerce. These statements are clearly inconsistent with the legal position that such sales are unlawful *per se* under relevant federal or state laws. Plaintiff also acknowledges that CBDI and Majik are competitors in the market for CBD products in paragraph 15 of the Complaint, which is inconsistent with the argument that such sales were, or are, illegal.

Further, Plaintiff states in paragraph 48 of its TTAB Petition for Cancellation that "goods claimed under the CBD MD mark (skin and body topical lotions, creams and oils for cosmetic use; medicinal creams for skin care; medicinal herbal preparations; medicinal oils; herbs for medicinal purposes; all of the aforementioned containing CBD) are either identical or nearly identical to the goods being sold under the CBDMD, CBDMD SYNERGY and SYNERGY CBDMD marks" of CBDI (emphasis added). Further, in paragraph 62 of the Petition CBDI asserts that CBDI "has sold goods under the CBDMD mark in all fifty states on or prior to January of 2018." In the Complaint in this action Plaintiff reiterated its assertion that its CBDMD line of CBD-containing products is available in interstate commerce and that the Plaintiff and Majik are competitors in the market for CBD products (ECF No. 1, Complaint ¶¶ 10, 15; *see also* ECF No. 31, Majik Counterclaims, ¶¶ 100-101, 116-117). Obviously, the alleged illegality of the Registrant Majik's goods would also make the identical or nearly identical goods of CBDI illegal, preventing valid use of the CBDI's alleged marks, and CBDI has alleged that they have had valid legal use in all 50 states. It is further noted that Plaintiff claims legal sales of its CBD-containing products since "at least as early as May 16, 2017" in paragraph 10 of the Complaint. Thus, CBDI's own statements and positions in their pleadings establish that CBD-containing product sales are not, and were not, illegal under federal law.

Majik's Amended Counterclaims assert and establish that the "Plaintiff has admitted in requests for admissions in the related TTAB cancellation proceeding that (i) the goods containing CBD in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/451,429 sold since at least as early as December 20, 2018, (ii) the goods containing CBD in class 003 and 005 used with the mark cbdMD in trademark application serial number 88/451,502 sold since at least as early as December 20, 2018, and (iii) the goods in class 003 and 005 used with the mark CBDMD in trademark application serial number 88/944,504 sold since at least as early as May 24, 2017, each has not, and does not, violate any known federal or state laws." (ECF No. 31, Majik Counterclaims ¶ 53). Similar allegations are including regarding marks for CBD-containing products sought to be registered in trademark application serial numbers 88/451,556 and 88/451,595 (ECF No. 31, Majik Counterclaims ¶ 71).

CBDI also asserts that the goods covered by the CBD MD registration are illegal at the federal level under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. ("CSA"), (ECF No. 1, Complaint ¶ 30; ECF No. 37 at 7). The purported basis of this allegation is the Drug Enforcement Administration's interpretation that Schedule I of the CSA includes extracts comprised of cannabinoids from cannabis plants. The CSA in effect at the time of the filing of the Majik's mark prohibited, among other things, manufacturing, distributing, dispensing, or possessing certain controlled substances, including marijuana and marijuana-based preparations. 21 U.S.C. §§ 812, 841(a)(1), 844(a), and 802(16) (defining "[marijuana]"). Marijuana was and is currently listed as a Schedule I narcotic under the CSA, meaning the federal government believes it to be a dangerous drug with no recognized medical benefit. Consequently, any CBD derived from marijuana violates the CSA in effect at the time.

Hemp, on the other hand, is treated and considered differently under the CSA and related legislation. The DEA defined hemp as the parts of the cannabis plant excluded from the CSA, namely the mature stalks and seeds. To legally grow cannabis in the U.S. – regardless of whether it is hemp - the grower must possess a permit from the DEA and, consequently, cultivating hemp without a permit remains a federal crime. There is, however, currently an exception codified in the 2014 federal Farm Bill, which defines "industrial hemp" as cannabis that contains less than 0.3 percent THC by weight, and which allows state departments of agriculture, universities, and colleges to cultivate industrial hemp for educational and research purposes without a DEA permit. *See* 2014 Farm Bill § 7606, codified at 21 U.S.C. § 802(16). Thus, it was not and is not a violation of the CSA to purchase, sell, and possess processed hemp products. The 2018 Farm Bill, effective December 20, 2018, further clarified the current legality of CBD processed from material that contains less than 0.3 percent THC by weight. *See* 21 U.S.C. § 802(16).

Further, in *Hemp Industries Association v. Drug Enforcement Administration*, 357 F.3d 1012 (9th Cir. 2004), WL 225037 03-71693, the Ninth Circuit held that the DEA had gone beyond its mandate in attempting to regulate all products containing any amount of THC because "Congress did not regulate non-psychoactive hemp in Schedule I." *Id.* at 1015. The Ninth Circuit further held that "[t]he DEA's action is not a mere classification of its THC regulations; it improperly renders naturally-occurring non-psychoactive hemp illegal for the first time." *Id.* at 1017. The court concluded that Congressional intent was, "unambiguous" with regard to the regulation of non-psychoactive hemp, and ruled that the DEA "cannot regulate naturally-occurring THC not contained within or derived from marijuana," *i.e.*, non-psychoactive hemp products – because non-psychoactive hemp is not included in Schedule I. *Id.* at 1018. As a result of the *Hemp Industries Association* case, companies and individuals may freely sell CBD derived from

processed hemp (but not from marijuana), imported from outside the U.S., or from growers exempted from DEA permits or from those with DEA permits. The CBD contained in Majik's goods is appropriately sourced such that that all the goods identified in the application do and will comply with relevant federal law, including the CSA, 21 U.S.C. §§ 801-971, in effect at the time of the registration, as well as today.

CBDI also makes allegations of illegality (ECF No. 1, Complaint ¶ 30; ECF No. 37 at 7) under the Food, Drug and Cosmetic Act ("FDCA"), which gives authority to the Food and Drug Administration ("FDA") for regulation. *See* 21 USC § 301, *et seq.* The FDA has stated that "[s]cience forms the basis for decisions at the U.S. Food and Drug Administration (FDA) and is paramount when it comes to making decisions that will impact the health and safety of the American public. We apply this rigorous, science-based approach to matters large and small that come before the Agency — including with respect to products containing cannabis or cannabis-derived compounds, including cannabidiol (CBD)." *See* https:www.fda.gov/news-events/fda-voices/fda-comitted-sound-science-based-policy-cbd. Further "[t]he Agency understands the importance of communicating clearly with the public about our approach to CBD and is taking an Agency-wide, integrated, and collaborative approach to addressing the regulation of products made from CBD that fall under our jurisdiction. Through this work, the FDA is exploring potential pathways for various types of CBD products to be lawfully marketed. An important component of this work is obtaining and evaluating information to address outstanding questions related to the safety of CBD products that will inform the Agency's consideration of potential regulatory frameworks for CBD while maintaining the FDA's rigorous public health standards." *See* https:www.fda.gov/news-events/fda-voices/fda-comitted-sound-science-based-policy-cbd. Thus, the FDA's position is clear that there is not a *per se* federal prohibition on products containing

CBD, and it continues to work to refine regulatory frameworks. It is also clear that the FDA (and the whole CBD industry) takes a dim view of the unsubstantiated therapeutic claims of CBD such as made by CBDI and its products, discussed in the false advertising counts below.

Majik's Counterclaims establish that it has "worked with Louisiana as the state has updated it laws regarding CBD products. The state of Louisiana has conveyed approval of Defendant's product labels for sale in Louisiana and has granted Defendant a CBD DEALER PERMIT under permit number CBD.52.0000000330-O, which authorizes the Defendant to engage in the sale of hemp or hemp derived CBD products subject to state law." (ECF No. 31, Majik Counterclaims ¶ 9.)

The counterclaims also assert and detail that Majik owns and commercially uses the distinctive mark CBD MD on goods sold in interstate commerce including Skin and body topical lotions, creams and oils for cosmetic use, all of the aforementioned containing CBD; and Medicinal creams for skin care; Medicinal herbal preparations; Medicinal oils; and Herbs for medicinal purposes; and that the CBD MD is a distinctive, valuable and valid enforceable mark of the Defendant Majik. (ECF No. 31, Majik Counterclaims ¶¶ 8, 13, 15-21, 93-95, 111-112.) These allegations are more than sufficient to state a plausible claim based on the legal activities of Majik.

Thus, CBDI's assertions that Majik's products violated federal law (either at the time of registration or now), which is incorrect, and that this alleged violation prevents legitimate use or intention to use of the mark CBD MD in interstate commerce, which is also incorrect, cannot provide a legitimate basis to dismiss Majik's Amended Counterclaims.

CBDI also erroneously asserts that "Majik does not allege any specific facts concerning the likelihood of confusion factors." (ECF No. 37, CBDI Brief at 8.) The Counterclaims, however, provide multiple examples that goods sold by CBDI in interstate commerce containing CBD under

the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM substantially overlap with the goods sold under the CBD MD mark of the Majik's Registration No. 5,173,264 and these products are directly competing (ECF No. 31, Majik Counterclaims ¶¶ 97-98, 113, 117). Further, the Counterclaims describe that "the trade channels of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff (CBDI) in interstate commerce are "nearly identical" as for the Defendant Majik's goods sold under the Defendant Majik's mark CBD MD" (ECF No. 31, Majik Counterclaims ¶¶ 101, 116).

The allegations contained in the Counterclaims clearly set forth that the "alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in interstate commerce contain the dominant term CBDMD which exhibits substantially the same sound and visual depiction as the Defendant Majik's mark CBD MD" (ECF No. 31, Majik Counterclaims ¶¶ 99, 114) and that the "alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM used by cbdMD, Inc. and/or Plaintiff in interstate commerce are similar in both connotation and commercial impression as the Defendant's mark CBD MD" (ECF No. 31, Majik Counterclaims ¶¶ 100, 115).

The Counterclaims also assert that the use by CBDI of the alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM in interstate commerce was and is without the consent of Majik and this use in connection with the sale, offering for sale, distribution, or advertising of the described goods is likely to cause confusion, or to cause mistake, or to deceive the relevant public, including

consumers, as to the source of the goods and/or imply a sponsorship, association or endorsement by or with the Defendant Majik in association with the mark CBD MD and Registration No. 5,173,264 (ECF No. 31, Majik Counterclaims ¶¶ 103, 119). It is well established that proof of actual confusion is not necessary to establish a likelihood of confusion. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009).

In short, Majik's Counterclaims, including Count One, allege more than sufficient facts that make plausible that there is a threat of confusion by the consuming public based on CBDI's use of confusingly similar marks to Majik's registered CBD MD mark. Positions taken by CBDI in its motion is at odds with the stated position of Plaintiff in its own Complaint and in the related Petition for Cancellation. Moreover, CBDI's position on illegality in nonsensical in light of the main reason for the Plaintiff bringing this suit, namely to usurp Majik's rights and to clear the way for their own trademark registrations for almost identical CBD products.

## II. Majik has asserted a plausible claim for common law trademark infringement.

Majik has asserted a plausible claim for common law trademark infringement against both Parent Corporation, cbdMD, Inc., and Plaintiff, CBD Industries, LLC in count II of its Amended Counterclaims. CBDI's argument to dismiss here is based on the same rationale as that set forth above in connection with Count I. Majik's responses above are equally applicable here to deny the motion with respect to Count II. Further, this count is based upon the common law in North Carolina and the existence or validity of Majik's registration is not an element of, or specifically relevant to, this count.

## III. Majik's Counterclaim Count III, regarding false designation of origin and false descriptions, should not be dismissed.

Majik likewise has asserted a plausible claim for false designation of origin and false descriptions under 15 U.S.C. §1125 against both cbdMD, Inc. and CBD Industries, LLC in Count III of its Amended Counterclaims based upon three separate bases.

First, CBDI has based its motion to dismiss this count on the same rationale as that set forth above in connection with Count I. Majik's responses above are equally applicable here to deny the motion with regard to the Mark based upon violations of 15 U.S.C. §1125.

Second, regarding the name of the Parent Corporation, cbdMD, Inc., the Counterclaims further set forth that in May 2019, Parent Corporation was aware that the use of the name cbdMD, Inc. in commerce in connection with CBD products was likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of that entity with the Defendant Majik, or as to the origin, sponsorship, or approval of such CBD products by Defendant Majik and that the name change of the Parent Corporation was to facilitate the illicit usurpation of the Defendant Majik's rights in its CBD MD mark by the Parent Corporation and/or Plaintiff. (ECF No. 31, Majik Counterclaims ¶¶ 28, 30, 127-128.) The Counterclaims allege more than sufficient facts that make plausible that there is a threat of confusion by the consuming public based upon the nefarious actions of CBDI with regard to the Parent Corporation's use of the cbdMD, Inc. name.

Third, CBDI also argues that the false advertising claims set forth in Count III should be dismissed. As stated by the Fourth Circuit in *PBM Products, LLC v. Mead Johnson & Co.*:

> [T]he Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B). Thus, a plaintiff asserting a false advertising claim under the Lanham Act must establish that: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the

misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

639 F.3d 111, 120 (4th Cir. 2011) (internal quotations and citations omitted).

Further, the Counterclaims assert that CBDI, specifically the Parent Corporation, has publicly made claims that its CBD Products could (i) boost brain power, (ii) slow aging, (iii) battle cancer, (iv) improve digestive function, (v) combat allergies, (vi) ease the side effects of menopause, and (vii) minimize hangover symptoms. (ECF No. 31, Majik Counterclaims ¶¶ 75, 130.) The Counterclaims assert that these claims have been made in at least publicly available blog posts and/or product descriptions. (ECF No. 31, Majik Counterclaims ¶¶ 75, 130.) There is, as of the filing date of the Amended Counterclaims, no credible medical or scientific substantiation for any of these claims. The counterclaims assert that CBDI's unsubstantiated claims regarding its CBD Products were made in interstate commerce, are misleading statements suggesting there is evidence and support for these unsubstantiated claims, are likely to deceive the relevant public as to the proven therapeutic benefits of these products, and that CBDI's unsubstantiated claims regarding its CBD Products are material misrepresentations as these deceptive statements are likely to influence purchasers to purchase the products based upon unproven therapeutic benefits of these products. (ECF No. 31, Majik Counterclaims ¶¶ 75, 130-132.) These allegations are more than sufficient to establish a plausible claim and to deny the motion to dismiss.

Moreover, the false and misleading actions of CBDI are a plague on the CBD products industry as noted by the FDA: "[m]isleading, unproven, or false claims associated with CBD products may lead consumers to put off getting important medical care, such as proper diagnosis, treatment, and supportive care." *See* https:www.fda.gov/news-events/fda-voices/fda-comitted-

sound-science-based-policy-cbd. Over the past several years, the FDA has issued several warning letters to firms that were marketing unapproved new drugs claiming to contain CBD, including for uses such as treating cancer or Alzheimer's disease. *See* https:www.fda.gov/news-events/fda-voices/fda-comitted-sound-science-based-policy-cbd; *s*https:www.fda.gov/news-events/fda-voices/fda-warns-15-companies-for-illegally-selling-various-products-containing-cannabidiol-agency-details. The misleading statements of CBDI that their CBD Products could (i) boost brain power, (ii) slow aging, (iii) battle cancer, (iv) improve digestive function, (v) combat allergies, (vi) ease the side effects of menopause, and (vii) minimize hangover symptoms is the exact type of false and misleading advertising intended to be prevented by the false advertising statutes of the Lanham Act.

CBDI also argues that the Counterclaims lack specificity but, as explained herein, this is incorrect. Majik has not asserted CBDI has made some broad, unspecified false claim, but rather specifically states and describes that CBDI has expressly made the claims that their CBD Products could (i) **boost brain power**, (ii) **slow aging**, (iii) **battle cancer**, (iv) **improve digestive function**, (v) **combat allergies**, (vi) **ease the side effects of menopause**, and (vii) **minimize hangover symptoms**. (ECF No. 31, Majik Counterclaims ¶¶ 75, 130-132.) Thus, the Counterclaims include the WHO – the Parent Corporation, the WHAT – made the expressly specified unproven medical claims, the WHY – to improperly advertise and sell its products at the expense of competitors in the industry, and the WHERE – in publicly available blog post and product descriptions of the Plaintiff, and even the WHEN – as blog posts and product descriptions that are concurrently available and thus ongoing until they are removed from circulation. There is no need for speculation as to what Majik is complaining about or asserting with regards to this Counterclaim of false advertising, and it is more than adequately pled.

CBDI also attempts to twist the logic of a California District Court case, *Caltex Plastics, Inc v Elkay Plastics Company Inc,* No. 212cv10033RSWLJEMX, 2015 WL 13283255 (C.D. Cal. Feb 4, 2015), to erroneously suggest that CBDI can make any unproven medical claims it wishes. This rationale is absurd. The issue addressed in the *Caltex* case was that at trial "Plaintiff bears the burden of proving, by affirmative evidence, that Elkay's StratoGrey products do not meet the requirements for MIL 81705 Type III specification*." Id*. at 9. The court added in a footnote, that in a case for false advertising under the Lanham Act, the burden of proof does not shift to the defendant to prove substantiation of advertising claims because otherwise, a plaintiff could use a false advertising claim to "shoehorn an allegation of violation of the Federal Trade Commission Act, which does not allow private causes of action." *Id*. Here while the burden of proof will indeed be on the Defendant Majik to prove its case at trial, this is not the applicable standard at the motion to dismiss stage. The suggestion that the *Caltex* case supports CBDI's motion is nonsensical.

In sum, the Counterclaims sufficiently and with specificity assert a false advertising claim under the Lanham Act, which includes details that: (1) the Counterclaim Defendants made false and/or misleading description of facts in a commercial advertisement about its own product; (2) these misrepresentations are material, in that they are likely to influence the purchasing decision; (3) these misrepresentations actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the Counterclaim Defendants placed the false or misleading statement in interstate commerce; and (5) the Majik has been or is likely to be injured as a result of the misrepresentation.

## IV. Majik has stated a plausible claim for Cyber-Piracy under 15 U.S.C. § 1125.

Majik has asserted a plausible claim for cyber-piracy under 15 U.S.C. § 1125 against cbdMD, Inc in Count IV of the Amended Counterclaims based upon the Parent Corporation's registration and use of the domain name www.cbdmd.com in commerce.

As outlined by the court in *CrossFit, Inc. v. Jenkins*, 69 F.Supp.3d 1088, 1097 (D. Colo. 2014):

> Congress enacted the Anti–Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners. *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,* 527 F.3d 1045, 1057 (10th Cir.2008) (internal quotation marks and citation omitted) "The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark." *Id.* (citing 15 U.S.C. § 1125(d)(1)(A)). *See also iYogi Holding Pvt. Ltd. V. Secure Remote Support, Inc.,* No. C–11–0592 CW, 2011 WL 6291793, at *16 (N.D.Cal. Oct. 25, 2011) ("In order to state a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a trademark owner must show the defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name.") (citing 15 U.S.C. § 1125(d)(1)(A) and *Verizon California Inc. v. Navigation Catalyst Systems, Inc.,* 568 F.Supp.2d 1088, 1094 (C.D.Cal.2008)).

Similarly here, Majik's Counterclaims assert that CBDI registered, trafficked in, and used a domain name, www.cbdmd.com, that is confusingly similar (essentially identical) to Majik's distinctive CBD MD registered trademark and did so in bad faith to profit from Majik's mark and to usurp Majik's right in the name. (ECF No. 31, Majik Counterclaims ¶¶ 129, 140-142.)

CBDI seems to suggest that Count IV fails because the registration date of the domain is not plead. The Amended Counterclaim, however, establishes, and is even confirmed in the arguments of CBDI, that the registration of the domain www.cbdmd.com followed the illicit use

of the CBDMD marks and corporate name by CBDI, which was *after* the establishment of rights in the CBD MD mark by Majik. (ECF No. 31, Majik Counterclaims ¶¶ 96, 112.) Majik has asserted the continued use of its distinctive mark since its original use from at least as early as February 2016 (ECF No. 31, Majik Counterclaims ¶ 13).

CBDI also argues that "a cursory review of www.cbdmd.com as a whole makes clear there is no likelihood of confusion." (ECF No. 37, CBDI Brief at 16.) Such a review is not part of the standard under a motion to dismiss and, in any event, the domain name is substantially identical to the registrant Majik's CBD MD mark, such that Majik has stated a plausible claim and would be difficult to see anything BUT confusion here.

## V. Majik has adequately pled a violation of the N.C. UDTPA by CBDI under N.C. Gen. Stat. § 75-1.1, et seq.

Majik asserts a claim for violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, *et seq.*, against both cbdMD, Inc. and CBD Industries, LLC in Count V of its Amended Counterclaims. The basis for this count is set forth in the Counterclaim as i) the trademark infringement of the Defendant's mark by the Parent Corporation and, alternatively, the Plaintiff CBD Industries, LLC; ii) the acts by Parent Corporation and Plaintiff against Defendant constituting the mark-based violations of 15 U.S.C. §1125; iii) the acts by Parent Corporation and Plaintiff against Defendant constituting the identity-based violations of 15 U.S.C. §1125; iv) the acts by Parent Corporation and Plaintiff against Defendant constituting false advertising-based violations of 15 U.S.C. §1125; v) the acts by Parent Corporation and Plaintiff against Defendant constituting Cyber-piracy violations of 15 U.S.C. §1125; and vi) Plaintiff's bad faith filing and failure to prosecute the TTAB Cancellation Proceeding against the Defendant.

(ECF No. 31, Majik Counterclaims ¶¶ 18-30, 36-38, 75-90, 92-106, 111-120, 127-135, 139-142, 150-155.)  All of these allegations are set forth with specificity in the Counterclaims.  *See id.*

CBDI chose only to address the allegations of Plaintiff's bad faith filing and failure to prosecute the TTAB Cancellation Proceeding against the Defendant related to this count.  CBDI misconstrues the nature of this claim as attacking the basis of the cancellation petition.  As alleged in the Amended Counterclaim, however, Plaintiff, at the direction of its managing member the Parent Corporation and Martin A Sumichrast, filed Cancellation Proceeding 92071109 in bad faith solely to drive up the legal fees of the Defendant Majik.  (ECF No. 31, Majik Counterclaims ¶¶ 76-90.)  Martin A. Sumichrast, chairman of the Board of Directors and Co-CEO of cbdMD, Inc., made this strategy clear when he sent a text message to a member of Defendant stating "I hope your shareholders like to write checks to lawyers." (ECF No. 31, Majik Counterclaims ¶¶ 76, 89.)  Plaintiff repeatedly demonstrated its illegitimate disinterest in prosecuting the Cancellation Proceeding and filed this litigation only once full participation in the Cancellation Proceeding would have been forced upon them.  The egregious actions of the Plaintiff are described in detail in the Counterclaims.  (ECF No. 31, Majik Counterclaims ¶¶ 76-90.)

It is the manner of the prosecution of the Cancellation proceeding in bad faith that forms the basis for this count.  This type of harassment and vexatious prosecution cannot be allowed to stand or it will serve as a blueprint for large corporations to use to harass smaller competitors with valid registrations.  Dismissing this count would encourage larger competitors to first bring a cancellation proceeding and then churn that case with disregard for the rules of that tribunal until participation becomes mandatory, then jump to the federal court and whitewash the cancellation proceedings, which will be placed on hold.  The basis for claim regarding the bad faith prosecution of the cancellation is set forth in detail and this count states a plausible claim as pled.

## VI.    Majik states a claim for common law unfair competition.

Majik asserts a claim for common law unfair competition against cbdMD, Inc and CBD Industries, LLC in Count VI of the Amended Counterclaims, which includes detailed allegations of the alleged anticompetitive acts as set forth in the Counterclaim including, but not limited to, the allegations set forth in Counterclaim Count V and incorporated by reference.  (ECF No. 31, Majik Counterclaims ¶¶ 160-162.) CBDI apparently grouped its argument regarding Count VI with that for Count V.  Majik's response above is equally applicable here as this claim in more than adequately pled.

## CONCLUSION

For the reasons set forth above, Majik respectfully requests the Court deny the Counterclaim Defendants' Rule 12(b)(6) motion to dismiss.

Respectfully submitted, this 21st day of October, 2021.

/s/ Blynn L. Shideler
Blynn L. Shideler
PA Registration No. 35,034
Blynn@blklawgroup.com
(Admitted *Pro Hac Vice*)
3500 Brooktree Road, Suite 200
Wexford PA 15090
Telephone: (724) 934-5450
Facsimile:  (724) 934-5461

and

/s/ J. Christopher Jackson
J. Christopher Jackson
N.C. State Bar No. 26916
cjackson@morningstarlawgroup.com
John T. Kivus
N.C. State Bar No. 42977
jkivus@morningstarlawgroup.com

MORNINGSTAR LAW GROUP
421 Fayetteville Street, Suite 530
Raleigh, NC 27601
Telephone: (919) 590-0365
Facsimile: (919) 882-8890

*Attorneys for Majik Medicine, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all counsel of record in this matter.

<u>*/s/ J. Christopher Jackson*</u>
J. Christopher Jackson
N.C. State Bar No. 26916

*Counsel for Majik Medicine, LLC*