IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-069-RJC-DCK

| | |
|---|---|
| **CBD INDUSTRIES, LLC,** ) | |
| ) | |
| **Plaintiff and** ) | |
| **Counterclaim Defendant,** ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **MAJIK MEDICINE, LLC,** ) | |
| ) | |
| **Defendant,** ) | |
| **Counterclaimant and Third-** ) | |
| **Party Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **cbdMD, INC.,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on CBD Industries, LLC and cbdMD, Inc.'s "Motion To Dismiss" (Document No. 36). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

CBD Industries, LLC ("CBD Industries" or "Plaintiff") initiated this action with the filing of a "Complaint" (Document No. 1) on February 12, 2021, against Majik Medicine, LLC ("Majik" or "Defendant"). According to the Complaint, Plaintiff CBD Industries "started selling products including topical lotions, topical creams, topical oils, medicinal lotions, medicinal creams and medicinal oils under the CBDMD mark at least as early as May 16, 2017." (Document No. 1, p.

3).  Plaintiff alleges that it has "generat[ed] sales in excess of $30 million."  Id.  By its own representations, Plaintiff indicates that although it has "applied to register certain trademarks," those trademarks "have not been issued."  Id.  CBD Industries does, however, allegedly possess "a common law trademark for CBDMD."  Id.

Defendant Majik, the Complaint alleges, is a "competitor[] in the market for CBD products."  Id. at p. 4.  In contrast to Plaintiff, Majik actually possesses a trademark registration "for the mark CBD MD in Classes 003 for skin and body topical locations, creams and oils for cosmetic use;  all of the aforementioned containing…CBD…and 005 for medicinal creams for skin care;  medicinal herbal preparations;  medicinal oils;  herbs for medicinal purposes…[each of which contains] CBD."  Id.  Majik's trademark – U.S. Trademark Reg. No. 5,173,264 – was issued by the U.S. Patent and Trademark Office ("PTO") on March 28, 2017, according to the Complaint. Id. at p. 5.  The trademark was placed on the Supplemental Register, according to Plaintiff. (Document No. 37, p. 2).  Majik allegedly indicated a date of first use in commerce of February 21, 2016, when it filed its application for registration.  (Document No. 1, p. 5).

Prior to the filing of the instant case, Plaintiff, "through an affiliated entity…filed a petition to cancel Majik's registration for its CBD MD Mark, which is pending before the PTO's Trial and Appeals Board ('TTAB')."  Id.  The impetus for initiating this cancellation proceeding presumably, according to the Complaint, is related to CBD Industries' belief that the PTO "should never have issued" a registration in March 2017 for Majik's trademark.  Id. at pp. 4, 6. Plaintiff contends that Majik's "use of the trademark in connection with a CBD food or dietary supplement product was not authorized under the" Federal Food, Drug, and Cosmetic Act ("FDCA"), and therefore its trademark should be cancelled since "Majik lacked a bona fide intention to lawfully use the mark."  Id. at p. 6.  And, Plaintiff contends that a prerequisite for federal registration of a

2

trademark is that "use of [the] mark in commerce must be lawful." Id. (citations omitted). According to CBD Industries and cbdMD, Inc.'s "Brief In Support Of Motion to Dismiss," the TTAB has "suspended that cancellation proceeding pending the outcome of this civil action." (Document No. 37, p. 2). In staying the TTAB cancellation proceeding, the TTAB effectively granted cbdMD's motion to stay a proceeding that *it initiated itself* prior to filing suit in this court seeking, by its own admission, nearly identical relief to that sought in this Court – the cancellation of Majik's trademark – plus some additional claims. Id. at pp. 2-3.

Plaintiff's Complaint alleges five claims against Defendant – none of which are the subject of a motion to dismiss. Those claims include: (1) a request for an order directing the cancellation of Majik's trademark registration pursuant to 15 U.S.C. §§ 1119 and 1064; (2) false designations of origin and false advertising under section 43(a) of the Lanham Act; (3) false advertising and unfair competition under state law; (4) trade disparagement; and (5) unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. See (Document No. 1, pp. 14-19).

On September 9, 2021, "Defendant's First Amended Answer, Defenses, Counterclaims And Third Party Complaint" (Document No. 31) was filed. Defendant brought a third party defendant, cbdMD, Inc., into the lawsuit. cbdMD, Inc. is allegedly the Parent Corporation of Plaintiff CBD Industries, and Majik contends that cbdMD, Inc. rather than CBD Industries "is the proper owner of trademark rights in the subject CBDMD marks…for which applications for federal registrations have been applied." (Document No. 31, p. 16). Defendant brings six counterclaims: (1) for trademark infringement under 15 U.S.C. § 1114 against both cbdMD, Inc. and CBD Industries; (2) for common law trademark infringement against both cbdMD, Inc. and CBD Industries; (3) for false designation of origin and false descriptions under 15 U.S.C. § 1125

3

against both cbdMD, Inc. and CBD Industries; (4) for cyberpiracy against cbdMD, Inc. under 15 U.S.C. § 1125; (5) for violation of the UDTPA against both cbdMD, Inc. and CBD Industries; and (6) for common law unfair competition against both cbdMD, Inc. and CBD Industries. Id. at pp. 42-58. These counterclaims are the subject of third-party defendant cbdMD, Inc. and Plaintiff CBD Industries' "Motion To Dismiss," and thus the subject of the present Memorandum and Recommendation.

In "Defendant's First Amended Answer, Defenses, Counterclaims And Third Party Complaint" (Document No. 31), Defendant alleges that it "is based in Louisiana and has worked with Louisiana as the state has updated its laws regarding CBD products," and Louisiana has issued Defendant a CBD dealer permit that "authorizes [] Defendant to engage in the sale of hemp or hemp derived CBD products." (Document No. 31, p. 21). Defendant goes on to allege that it "became aware [around September 2018] of infringing activities of [Plaintiff's] Parent Corporation, namely the marketing of a line of oils and herbal preparations containing CBD all sold under a CBD MD mark" on a website containing the CBD MD domain name. Id. at pp. 23-24.

At the time, however, Defendant did not know that these "infringing uses" were being propagated "by Parent Corporation…who controls the nature and quality of [the] goods." Id. at p. 25. Instead, it thought that the relevant activity was being conducted by "an entity known as cbdMD LTD" out of Northern Ireland. Id. at p. 24. Defendant then sent a letter to cbdMD LTD on September 25, 2018 advising the company of its federal trademark registration but noted that it was open to discussion for resolution of the issues regarding use of the mark. Id. Allegedly, over the course of the next few months, Defendant and counsel for "the Parent Corporation [then known as Level Brands Inc.], Plaintiff, and Cure Based Development, LLC" exchanged communications

4

that Defendant thought represented progress toward resolving the issues of the allegedly infringing use of their mark. Id. Cure Based Development, LLC then filed applications for trademark registration for its CBD products on December 20, 2018, allegedly, Defendant states, "to create a false perception of [the] parties" and "to benefit the Parent Corporation's ongoing negotiations with Defendant." Id. at pp. 25-26. Defendant then states that Plaintiff "merged with Cure Based Development, LLC on or around December 20, 2018," and Level Brands, Inc. (the Parent Corporation) "changed its name to cbdMD, Inc. on or around May 1, 2019." Id. at p. 26. All of the corporate name changes and related activity, Defendant alleges, were instigated "to facilitate the illicit usurpation of the Defendant's rights in its CBD MD mark by the Parent Corporation and/or Plaintiff." Id. at p. 27.

The legal landscape surrounding federal trademark registration of CBD products is complicated and evolving at best and an ambiguous regulatory grey area at worst. The Patent and Trademark Office issued an Examination Guide entitled, "Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill," on May 2, 2019. The Guide outlines how the PTO views registration of trademarks for products involving CBD and the relevant federal law to which the office must look. The PTO highlights that it "refuses to register marks for goods and/or services that show a clear violation of federal law, regardless of the legality of the activities under state law." And, "[a] determination of whether commerce involving cannabis and cannabis-related goods and services is lawful requires consultation of several different federal laws, including the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, the Federal Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, and the Agriculture Improvement Act of 2018," the last of which is informally known as the 2018 Farm Bill.

5

Prior to the enactment of the 2018 Farm Bill on December 20, 2018, the Controlled Substances Act ("CSA") classified CBD as "a chemical constituent of the cannabis plant…[included within the CSA's] definition of marijuana." The PTO goes on to say that pre-December 20, 2018, then, all "goods encompassing CBD…[were] unlawful under federal law and [therefore] [did] not support valid use of the applied-for mark in commerce." The 2018 Farm Bill changed things such that hemp is no longer included under the "CSA's definition of marijuana, [meaning] that cannabis plants and derivatives such as CBD that contain no more than 0.3% THC on a dry-weight basis are no longer controlled substances under the CSA." However, not all hemp-derived CBD containing no more than 0.3% THC can be considered legal under federal law. This is because, according to the PTO's guide, "[t]he use in foods or dietary supplements of a drug or substance undergoing clinical investigations without approval of the U.S. Food and Drug Administration (FDA) violates the FDCA," and CBD is undergoing clinical investigation. Thus, "registration of marks for foods, beverages, dietary supplements, or pet treats containing CBD will still be refused as unlawful under the FDCA, even if derived from hemp."

Undoubtedly, there are not clear rules under federal law for what is considered valid use in commerce of CBD products. Seemingly, some hemp-derived CBD containing at or below the threshold level of THC (0.3%) might be validly used in commerce under federal law. However, if that CBD product could be classified as a food, beverage, or dietary supplement, it would not be legal under the FDCA and therefore would be refused registration. Regardless of what the outcome of Defendant Majik's application for registration would be if it were filed today, it seems clear that issuance of a trademark registration in 2017 (as occurred) ran contrary to the PTO's own guidance. The PTO suggests in its guide that "[f]or applications filed *before* December 20, 2018 that identify goods encompassing CBD or other cannabis products, registration will be refused due to the

6

unlawful use or lack of bona fide intent to use in lawful commerce under the CSA."  Clearly, the PTO takes a different view post-enactment of the December 20, 2018 Farm Bill, but issues related to the PTO's view of the FDCA's impact are outstanding.  It is especially uncertain whether CBD products such as oils that both Plaintiff and Defendant produce or herbs that Defendant produces would be considered dietary supplements, food, or beverages under the FDCA and thus illegally used in commerce under federal law.  See (Document No. 1, pp. 3-4).

The nature and logic of the lawsuit is odd – and perhaps hypocritical – and warrants some high-level summary.  Curiously, while Plaintiff does not possess a trademark registration (although it has allegedly applied for one), it brings the lawsuit against Defendant, which does possess a trademark registration, contending that its registration should be cancelled for many reasons, one of which is the alleged illegality of Majik's products.  And, despite lambasting Majik for "caus[ing] consumers [to] erroneously believ[e] that [its] products are lawful food and dietary supplements, which they are not," Plaintiff is *by its own admissions* engaged in the same business – "CBDMD and Majik are competitors in the market for CBD products."  Id. at p. 4.  Furthermore, Defendant, in its responsive brief to cbdMD, Inc. and CBD Industries' "Motion To Dismiss," seems to recognize this irony: "the alleged illegality of the Registrant Majik's goods would also make the identical or nearly identical goods of [cbdMD, Inc. and CBD Industries] illegal, preventing valid use of [their] marks."  (Document No. 41, p. 6).  The whole lawsuit evokes an irony that is hard to see past, especially given the current muddy state of federal law regarding the legality of CBD products.

Plaintiff CBD Industries and Third-Party Defendant cbdMD, Inc. filed their "Motion To Dismiss" (Document No. 36) and "Brief In Support Of Motion To Dismiss" (Document No. 37) on September 30, 2021.  "Defendant And Counterclaim Plaintiff's Brief In Opposition To Motion

7

To Dismiss Amended Counterclaims" (Document No. 41) was filed October 21, 2021. CBD Industries and cbdMD, Inc.'s "Reply Brief In Support Of Motion To Dismiss" was filed November 4, 2021.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**1. Trademark Infringement Under the Lanham Act, Common Law Trademark Infringement, and Common Law Unfair Competition Counterclaims**

Plaintiff and cbdMD, Inc. argue in the instant "Motion To Dismiss" Defendant's counterclaims that Defendant's trademark infringement counterclaim pursuant to the Lanham Act should be dismissed because "Majik does not possess a valid trademark registration." (Document No. 37, p. 7). They state that Majik's trademark registration "was based on the sale of products that were unlawful under the Food, Drug and Cosmetic Act and Controlled Substances Act." Id. Arguing that "[a]n unlawful use cannot be used to establish a trademark priority in the cannabis field (even when that usage may be legal under state law) or result in a valid registration," CBD Industries and cbdMD, Inc. thus insist that the Court dismiss Defendant's trademark infringement counterclaim under the Lanham Act. Id.

In order to establish a trademark infringement claim under the Lanham Act (15 U.S.C. § 1114), a party must plead: (1) "that it owns a valid and protectable mark," and (2) "that the defendant's use of a reproduction, counterfeit, copy, or colorable imitation of that marks creates a likelihood of confusion." Mobile Tech Inc. v. InVue Sec. Prods. Inc., 3:18-CV-052-RJC-DSC, 2019 WL 3001285, at *2 (W.D.N.C. June 21, 2019), *adopted by* 2019 WL 2992053 (W.D.N.C. July 9, 2019)

(quoting Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018)) (internal quotations omitted).

With respect to the likelihood of confusion prong, there are nine factors to which the Fourth Circuit looks to determine if this element of a trademark infringement claim is satisfied:

> (1) The strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Variety Stores, Inc., 888 F.3d at 660. Nevertheless, "[l]ikelihood of confusion is an inherently factual issue." Mobile Tech Inc., 2019 WL 3001285, at *3 (citing Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 155 (4th Cir. 2014)). Accordingly, "[i]t is not appropriate to weigh the relevant factors at the motion to dismiss stage." Mobile Tech Inc., 2019 WL 3001285, at *3 (internal citations omitted).

The "test for common law trademark infringement in North Carolina is 'essentially the same' as that under the Lanham Act." Herrmann Int'l, Inc. v. Herrmann Int'l Europe, 1:17-CV-073-MR, 2021 WL 861712, at *9 (W.D.N.C. Mar. 8, 2021) (quoting Georgia Pac. Consumer Prod., L.P. v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010)). Moreover, "[l]ike federal claims under the Lanham Act, the likelihood of confusion is the 'keystone' of a claim for common law trademark infringement." Herrmann Int'l, Inc., 2021 WL 861712, at *9. And, furthermore, "[a]t common law, trademark ownership is acquired by actual use of the mark in a given market." Id. (quoting Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 267 (4th Cir. 2003)).

Regarding the movants' argument that the Lanham Act trademark infringement counterclaim should be dismissed because the trademark that Majik does possess is unlawful and

10

therefore not valid, the undersigned declines to pass judgment on this issue at this time. Indeed, the law regarding the legality of CBD products' use in commerce is unclear at this moment, as described in the Background section above. See supra pp. 5-7. Furthermore, the undersigned highlights that Defendant *already possesses* a trademark registration issued by the PTO at this time, and while a cancellation proceeding has been initiated against that registration, it is not clear at this point how the PTO will view the registration in light of the current state of federal law on CBD products. Thus, any argument at the motion to dismiss stage about the validity of Majik's trademark registration is premature without further discovery.

Movants also argue that Defendant's counterclaims for trademark infringement under the Lanham Act and for common law trademark infringement should be dismissed under Rule 12(b)(6). Specifically, they contend that Defendant "fails to allege plausible facts that would indicate that consumers are likely to be confused by [movants'] actual use of [the] trademark." (Document No. 37, p. 8). Defendant argues that it has alleged more than sufficient information to state counterclaims for both Lanham Act trademark infringement and common law trademark infringement. See (Document No. 41, pp. 10-12).

Defendant alleges that movants' "alleged trademarks CBDMD, cbdMD, CBDMD SYNERGY, SYNERGY CBDMD, CBDMD PREMIUM CBD OIL, and CBDMD PREMIUM…contain the dominant term CBDMD which exhibits substantially the same sound and visual depiction as the Defendant's mark CBD MD." (Document No. 31, p. 44). Defendant also states that these marks are "similar in both connotation and commercial impression," that the use of movants' marks "was and is without the consent of the Defendant and…is likely to cause confusion," and the "trade channels" are "nearly identical." Id. at pp. 44-45. The undersigned finds that Defendant has plausibly satisfied the likelihood of confusion element of both varieties of the trademark

infringement counterclaims (Lanham Act and common law) at the motion to dismiss stage of the litigation, as a detailed analysis of the nine factors is, as stated, not necessary at this point. Mobile Tech Inc., 2019 WL 3001285, at *3 (internal citations omitted). Therefore, the undersigned respectfully recommends that movants' "Motion To Dismiss" these two counterclaims be denied.

The undersigned further finds that Defendant has plausibly stated a counterclaim for common law unfair competition. This conclusion follows from the preceding analysis because "[c]ourts have applied essentially the same likelihood of confusion standard to claims for common law trademark infringement or unfair competition (regarding trademarks) under North Carolina law." Mobile Tech Inc., 2019 WL 3001285, at *3 (citing Georgia Pac. Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441, 449 (4th Cir. 2010)). Therefore, the undersigned further recommends that Defendant's common law unfair competition counterclaim survive dismissal.

### 2. False Designation of Origin and False Descriptions Under the Lanham Act

The elements of a false designation of origin claim are similar to those of a trademark infringement claim. "To state a false designation of origin claim [under] 15 U.S.C. § 1125(a), a plaintiff must sufficiently allege" five elements. Mobile Tech Inc., 2019 WL 3001285, at *2. The elements are: first, that "a defendant uses a designation;" second, "in interstate commerce;" third, "in connection with goods and services;" fourth, "which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services;" and fifth, "plaintiff has been or is likely to be damaged by these acts." Id. (quoting Superior Performers, Inc. v. Family First Life, LLC, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014)). Importantly, "[t]he test for a false designation of origin is 'essentially the same as the test for trademark infringement.'" Mobile Tech Inc., 2019 WL 3001285, at *2 (quoting JFJ Toys, Inc. v. Sears Holdings Corp., 237 F. Supp. 3d 311, 327 (D. Md. 2017)).

The elements of a false advertising claim are:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

The Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002) (internal quotations and citations omitted).

With respect to the false designation of origin counterclaim, the undersigned need not perform much more additional analysis than already done with respect to the trademark infringement counterclaim. See supra pp. 11-12; Migun Life, Inc. v. Cox, 1:17-CV-221-MR, 2018 WL 6028720, at *5 (W.D.N.C. Nov. 16, 2018) ("the elements of a general false designation of origin claim are identical to the elements of a claim for trademark infringement"). Therefore, since the undersigned concluded that Defendant had plausibly stated a counterclaim for trademark infringement, the undersigned will also respectfully recommend that movants' "Motion To Dismiss" as to the false designation of origin counterclaim be denied.

Nonetheless, additional analysis is required with respect to the false advertising counterclaim. With respect to each of the five elements required to state a false advertising claim under the Lanham Act, the undersigned finds for the following reasons that Defendant has satisfied each element. Particularly at the motion to dismiss stage, here, Defendant has pleaded facts sufficient to *state* a counterclaim – movants' arguments would go so far as to essentially require that Defendant prove its false advertising counterclaim at this stage, without the benefit of any discovery.

Although movants argue that "Majik fails to identify any specific claims cbdMD is alleged to have made, when those claims were made, and in what contexts," the undersigned finds that Majik's counterclaim states sufficient detail to survive dismissal at this point. (Document No. 37, p. 14). Indeed, Defendant specifically references the misleading claims that cbdMD, Inc. has made regarding its CBD products – they "boost brain power," "slow aging," "battle cancer," "improve digestive function," combat allergies," "ease the side effects of menopause," and "minimize hangover symptoms." (Document No. 31, p. 51). Defendant alleges that these claims "have been made in at least publicly available blog posts and/or product descriptions," and there is not yet "credible medical or scientific substantiation [of] any of these claims." Id. at pp. 51-52. The undersigned finds that these allegations successfully meet the first element of a false advertising claim: there was a "misleading description…in a commercial advertisement about [cbdMD, Inc.'s] own…products." The Scotts Co., 315 F.3d at 272. Furthermore, Defendant makes allegations sufficient to meet the remaining elements of a false advertising claim: "cbdMD, Inc.'s unsubstantiated claims regarding its CBD products were made in interstate commerce," the claims "are material misrepresentations as these deceptive statements are likely to influence purchasers to purchase the products based upon unproven therapeutic benefits of these products," and "Defendant has been and continues to be unfairly economically damaged by the use of these unsubstantiated claims…and will continue to suffer…damage to its…goodwill." (Document No. 31, p. 52).

### 3. Cyberpiracy Under the Lanham Act

The Anticybersquatting Consumer Protection Act "creates a cause of action for cybersquatting against anyone who registers, traffics in, or uses a domain name that is identical or confusingly similar to a trademark with the bad [] faith intent to profit from the good will associated with the

trademark." Hawes v. Network Solutions, Inc., 337 F.3d 377, 383 (4th Cir. 2003). Following review of Defendant's counterclaims, the undersigned agrees with Defendant that its allegations satisfy the pleading requirements for the cyberpiracy counterclaim to survive dismissal at this stage. See (Document No. 31, pp. 53-54). Indeed, as Defendant states, "Majik's Counterclaims assert that CBDI registered, trafficked in, and used a domain name, www.cbdmd.com, that is confusingly similar (essentially identical) to Majik's distinctive CBD MD registered trademark," all of which was allegedly done "in bad faith to profit from Majik's mark and to usurp Majik's right in the name." (Document No. 41, p. 17). cbdMD, Inc.'s arguments to the contrary are not persuasive.

**4. Unfair and Deceptive Trade Practices Act Counterclaim**

In order to state a claim under North Carolina's UDTPA, "a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc., 3:20-CV-504-FDW-DSC, 2021 WL 5225634, at *2 (W.D.N.C. Nov. 9, 2021). Movants focus their argument on the cancellation proceedings initiated at the TTAB, arguing that "courts have held that filing an objectively reasonable lawsuit cannot serve as a basis for a claim under North Carolina's UDTPA." (Document No. 37, p. 17) (internal citations omitted). However, as Defendant points out, the alleged "bad faith" cancellation proceeding does not provide Defendant's sole basis for alleging a UDTPA counterclaim against movants – indeed, Defendants provide multiple bases for the UDTPA counterclaim. See (Document No. 31, pp. 55-56). Those unfair and deceptive alleged practices include: "[t]he acts defining the trademark infringement of the Defendant's mark," "[t]he acts by Parent Corporation and Plaintiff against Defendant constituting the mark-based violations of 15 U.S.C. § 1125," "[t]he acts by Parent

15

Corporation and Plaintiff against Defendant constituting the identity-based violations of 15 U.S.C. § 1125," "[t]he acts by Parent Corporation and Plaintiff against Defendant constituting false advertising-based violations of 15 U.S.C. § 1125," and "[t]he acts by Parent Corporation and Plaintiff against Defendant constituting Cyber-piracy violations of 15 U.S.C. § 1125." Id. at p. 55. Therefore, regardless of the finding the Court ultimately makes regarding whether the cancellation proceeding was initiated in "bad faith," the UDTPA counterclaim can still proceed at this point on account of the multiple other bases upon which it is alleged. The undersigned thus respectfully recommends that movants' "Motion To Dismiss" as to Defendant's UDTPA counterclaim be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that CBD Industries, LLC and cbdMD, Inc.'s "Motion To Dismiss" (Document No. 36) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue

16

with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: October 19, 2022

David C. Keesler
United States Magistrate Judge